IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MICHAEL JOHNSON, CHARLES CUNNINGHAM, JERRY BAILEY, ERIC WOODARD, MICHAEL DARBONNE, MICHAEL McCULLOUGH, DEMON BENJAMIN, PAMELA GREEN, AND CHRISTOPHER HARRINGTON, | § § § § § § § | |
| | § | Case No. _____ |
| Plaintiffs, | § § | |
| v. | § § | |
| | § | |
| PACKAGING CORPORATION OF AMERICA; BOISE PACKAGING & NEWSPRINT, LLC; BOISE, INC.; ERIC SNELGROVE; AND RICK BUTTERIELD, | § § | |
| Defendants. | | |

## NOTICE OF REMOVAL

Packaging Corporation of America ("PCA"), Boise, Inc., Boise Packaging & Newsprint, LLC, and Rick Butterfield (the "Removing Defendants") file this Notice of Removal of a pending state proceeding from the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana. Removal is proper because this Court has diversity of citizenship jurisdiction over the litigation. 28 U.S.C. §§ 1332, 1441, and 1446. In support of removal, the Removing Defendants state as follows:

### I.     The Parties

"Plaintiffs" are:

1.  Michael Johnson, a citizen of the state of Louisiana;

2.  Charles Cunningham, a citizen of the state of Louisiana;

3.  Jerry Bailey, a citizen of the state of Louisiana;

4.  Eric Woodard, a citizen of the state of Louisiana;

5.   Michael Darbonne, a citizen of the state of Louisiana;

6.   Michael McCullough, a citizen of the state of Louisiana;

7.   Demon Benjamin, a citizen of the state of Texas;

8.   Pamela Green, a citizen of the state of Texas;

9.   Christopher Harrington, a citizen of the state of Louisiana; and

10.  Luis Tibuni, a citizen of the state of Louisiana.[1]

"Defendants" are:

1.   Packaging Corporation of America, a corporation incorporated under the laws of Delaware with its principal place of business in Illinois;

2.   Boise Packaging & Newsprint, LLC, a limited liability company formerly organized under the laws of Delaware and, for citizenship purposes, a citizen of Delaware and Illinois;

3.   Boise, Inc., a corporation formerly incorporated under the laws of Delaware with its principal place of business in Illinois;

4.   Eric Snelgrove, a Louisiana citizen whose citizenship can be disregarded because he is improperly joined in this case; and

5.   Rick Butterfield, a citizen of Washington.[2]

---

[1] Luis Tibuni was originally named as a plaintiff in Plaintiffs' first Second Amended Petition for Damages. He was later omitted from the list of plaintiffs included in Plaintiffs' second Second Supplemental Amended Petition for Damages. While PCA's position is that any claim by Tibuni would be time-barred, he is included herein out of an abundance of caution and based on his being named in one of the petitions filed herein (although not the controlling one).

[2] Although Rick Butterfield does not disrupt the Court's exercise of jurisdiction over this matter, he is also improperly joined in this case.

## II.    Background

1.    On June 12, 2017, plaintiffs filed an "Original Petition for Damages" in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, in a case styled: *Michael Johnson Et Al. v. Packaging Corporation of America, Et Al.,* Case Number 658636 (the "state proceeding").

2.    On August 2, 2017, plaintiffs served the Original Petition for Damages" on defendant PCA.

3.    On August 3, 2017, plaintiffs filed the "Plaintiffs' First Amended Petition for Damages;" on October 2, 2017, plaintiffs filed the "Plaintiffs' Second Amended Petition for Damages;" and on December 18, 2017, Plaintiffs filed the third amending petition for damages, misnamed as "Plaintiffs' Second Amending Petition for Damages," which is the final iteration of these filings (and hereinafter referred to as the Petition or "Pet."), on December 18, 2017.

4.    In the Petition filed in the state proceeding, Plaintiffs "bring negligence, gross-negligence, premises-liability, and intentional tort claims against Defendants related to a plant explosion that occurred in Beauregard Parish," Louisiana. The defendants include business entities PCA, Boise Inc., Boise Packaging and Newsprint, LLC ("Boise P&N"), and individuals Eric Snelgrove and Rick Butterfield (the latter two collectively referred to hereinafter as the "Individual Defendants"). (*See* Pet. at ¶¶ 18; 21-24; 30-32).  Plaintiffs specifically allege the premises-liability claim only against defendant Boise P&N.  (Pet. ¶¶ 25-29)  Plaintiffs seek damages for past and future medical expenses, loss of wages and earning capacity, pain and suffering, enjoyment of life, impairment and disability, and scarring and disfigurement.  (Pet. ¶ 33)  Plaintiffs do not allege that their damages are in excess of the federal jurisdictional amount but do acknowledge that the amount in controversy exceeds the amount necessary for trial by jury.  (Pet. ¶ 34).

### III.    Grounds for Removal

5.    This Court has original jurisdiction over the state proceeding.  There is complete diversity of citizenship between the Plaintiffs and the properly joined defendants.  Plaintiffs are all citizens of either Louisiana or Texas.  PCA is a citizen of Delaware and Illinois. Boise, Inc. and Boise P&N are citizens of Delaware and Illinois. Further, Defendant Rick Butterfield is completely diverse from all Plaintiffs, even though he is also improperly joined.

6.    As set forth below, Eric Snelgrove's citizenship should be disregarded because he has been improperly joined.  28 U.S.C. § 1332(a)(1); §§ 1441(a)-(b); *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014).

7.    Further, as set forth below, Removing Defendants learned, for the first time, that the amount in controversy in Plaintiffs McCullough's and Bailey's claims, individually, exceed $75,000.00, exclusive of costs and judicial interest as required by 28 U.S.C. § 1332(a), based upon Removing Defendants' receipt of McCullough's and Bailey's supplemental discovery responses on May 7, 2018 (for Mr. McCullough), and May 8, 2018 (for Mr. Bailey).

8.    Although it is presently unclear whether the claims of Plaintiffs Demon Benjamin, Charles Cunningham, Michael Darbonne, Pamela Green, Christopher Harrington, Michael Johnson, and Eric Woodard exceed the jurisdictional threshold, this Court has jurisdiction over their claims pursuant to its Supplemental Jurisdiction, 28 U.S.C. § 1367(a). Specifically, where the claims of one plaintiff satisfy the amount in controversy requirement, the Court can exercise supplemental jurisdiction over the claims of other persons joined as plaintiffs regardless of the value of those claims if they arise from the same case or controversy. *See Thibodeaux v. GEICO Adv. Ins. Co.*, No. 16-158, 2016 WL 4055660, at *6 (M.D. La. July 8, 2016) (quoting *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 558 (2005)).

9.  Removal is timely. Removing Defendants file this timely notice of removal within thirty days of their receipt of Plaintiffs McCullough's and Bailey's supplemental discovery responses in accordance with 28 U.S.C. § 1446(b). *See S.W.S. Erectors, Inc. v. Infax, Inc*., 72 F.3d 489, 494 (5th Cir. 1996) ("Under 28 U.S.C. § 1446(b), when an action is not initially removable, the defendant has 30 days after it receives a copy of "other paper from which it may first be ascertained" that the case is or has become removable."). These supplemental discovery responses constitute "other paper" from which Removing Defendants were first able to ascertain that the amount in controversy exceeded $75,000.

**A.  This action falls within the Court's diversity of citizenship jurisdiction.**

**1.  Complete diversity of citizenship exists between Plaintiffs and the Removing Defendants.**

10. There is complete diversity of citizenship between Plaintiffs, all of whom are citizens of either Texas or Louisiana, and the Removing Defendants, which are citizens of Delaware, Illinois, and Washington.

11. Plaintiffs Michael Johnson, Charles Cunningham, Jerry Bailey, Eric Woodard, Michael Darbonne, and Michael McCullough, and Christopher Harrington are citizens of Louisiana.

12. Plaintiffs Demon Benjamin and Pamela Green are citizens of Texas.

13. PCA is and was at the time plaintiff commenced the state proceeding a citizen of Delaware and Illinois.  PCA is a corporation organized under the laws of Delaware, and Illinois is the state containing PCA's principal place of business from which its high-level officers direct, control, and coordinate the corporation's activities.  28 U.S.C. § 1332(c)(1).

14. In 2017, both Boise, Inc. and Boise P&N were merged and incorporated into PCA and dissolved and no longer exist as separate entities.

15. Nevertheless, Boise, Inc. and Boise P&N are citizens of Delaware and Illinois:

a. Boise, Inc. was incorporated under the laws of Delaware with its principal place of business in Illinois, 28 U.S.C. § 1332(c)(1); and

b. Boise Packaging & Newsprint, LLC was a limited liability company deriving its citizenship from its members. The sole member of Boise P&N was Boise Paper Holdings, LLC. The sole member of Boise Paper Holdings, LLC was Boise, Inc. Accordingly, Boise P&N is also a citizen of Delaware and Illinois.

16. Rick Butterfield is a citizen of the State of Washington.

### 2. The citizenship of the Eric Snelgrove cannot defeat diversity jurisdiction because it has been improperly joined.

17. The doctrine of improper joinder prevents a plaintiff from defeating federal diversity jurisdiction simply by naming a non-diverse defendant. Improper joinder of a non-diverse party can be proved by showing "(1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Guillory v. PPG Indus.*, Inc., 434 F.3d 303, 308 (5th Cir. 2005) (citing *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)).

18. Eric Snelgrove—the only non-diverse defendant—has been improperly joined in this case because Plaintiffs are unable to establish a cause of action against him in Louisiana state court.

19. Plaintiffs cannot establish a cause of action against Mr. Snelgrove for individual liability because they can identify no factual allegations to establish that Mr. Snelgrove owed a "personal duty towards [them], breach of which specifically has caused [their] damages." *Canter v. Koehring Company,* 283 So.2d 716, 721 (La.1973).

20. The Louisiana Supreme Court has repeatedly insisted that liability cannot be imposed upon a managerial employee simply because a plaintiff has been injured in the workplace, nor can personal liability be imposed upon the officer, agent, or employee "simply because of his general

administrative responsibility for performance of some function of the employment." *See Canter v. Koehring Co.,* 283 So. 2d 716 (La. 1973); *Pisciotta v. Allstate Ins. Co.*, 385 So. 2d 1176 (La. 1980); *Lytell v. Hushfield*, 408 So. 2d 1344 (La. 1982); *Brown v. White*, 430 So. 2d 16 (La. 1982); *Esco v. Smith*, 468 So. 2d 1169 (La. 1985).

21. To determine the personal liability of an employee to a third-party courts use the *Canter v. Koehring Company,* 283 So.2d 716, 721 (La.1973) criteria:

1.    The principal or employer owes a duty of care to the third person . . . breach of which has caused the damage for which recovery is sought;

2.    This duty is delegated by the principal or employer to the defendant;

3.    The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances— whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty;

4.    ***With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages.*** If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.

(Emphasis added).

22. Thus, in order for a person to be considered an executive officer who is personally liable for an injury within the criteria set forth by *Canter*, "that person must have some personal contact with and responsibility toward the injured employee." *Esco*, 468 So. 2d at 1175. Courts have further explained

that "the correct test to be applied to determine whether the executive officers in [that] case are liable for [plaintiff's] injuries [is] whether the executive officer in question had some direct duty to provide [plaintiff] a safe place to work, including some control over purchase and availability of equipment and supplies." *Hoerner v. ANCO Insulations, Inc.*, 2000-2333, p. 22-23 (La. App. 4 Cir. 1/23/02), 812 So. 2d 45, 63–64.

23. Plaintiffs plead absolutely no facts to show any act or omission committed by Mr. Snelgrove that caused the alleged injuries. The only allegation specific to Mr. Snelgrove is that he was the mill manager on the date of the incident. (Pet. ¶ 18). Plaintiffs also fail to plead any personal responsibility or knowledge that Mr. Snelgrove possessed relative to any work being performed on the tank that was involved in the incident. Plaintiffs further plead no personal contact that they had with Mr. Snelgrove in any way, shape, or form. Neither do they allege that either Mr. Snelgrove was even on site the day of the incident. In short, Mr. Snelgrove is being sued for his job title—nothing more.

24. Although immaterial to the Court's exercise of jurisdiction in this case, Rick Butterfield is improperly joined in this litigation for the same reasons as Eric Snelgrove. Briefly, the only allegation in the Petitions specific to Mr. Butterfield is that he "was responsible for safety at the mill on the date of the explosion." (Pet. ¶ 18). Plaintiffs fail to plead any personal responsibility or knowledge that Mr. Butterfield possessed relative to any work being performed on the tank that was involved in the incident. Plaintiffs further plead no personal contact that they had with Mr. Butterfield in any way, shape, or form. Neither do they allege that either Mr. Butterfield was even on site the day of the incident. Like Mr. Snelgrove, Mr. Butterfield is being sued for his job title—nothing more.

25. The only other putative "Factual Allegations" identified as such by Plaintiffs and directed in any way toward the Individual Defendants are undifferentiated conclusory allegations made

against all of the "Defendants" (an undefined term used in the Petition and obviously encompassing PCA; Boise, Inc.; Boise P&N; and Mr. Snelgrove; and Mr. Butterfield) that the "Defendants":

    a.  "[F]ailed to provide Plaintiffs a safe workplace …";

    b.  "[W]ere responsible for owning, operating, maintaining and inspecting the equipment and tanks that ultimately exploded and caused harm";

    c.  "[H]ave previously experienced a similar incident involving an explosion of one of its tanks in 2008 at the Defendants' Tomahawk, Wisconsin facility …"; and

    d.  "[K]new of the hazard, and proceeded with endangering the health and safety of Plaintiffs …"

26.    Plaintiffs have not pled—and cannot plead—the necessary elements of a claim against Mr. Snelgrove or Mr. Butterfield. Rather, Plaintiffs seek to impose personal liability against them based solely on their job titles. Louisiana law does not allow such an overreach. Accordingly, this Court should dismiss the claim against Mr. Snelgrove or Mr. Butterfield on the basis of improper joinder.

### 3. The amount in controversy for Plaintiffs McCullough's and Bailey's claims, individually, exceeds $75,000.00, exclusive of interest and costs.

27.  On May 7, 2018, Plaintiffs transmitted Plaintiff McCullough's supplemental production of "medical and billing records received to date relating to Plaintiff Michael McCullough" in response to PCA's prior discovery requests. On May 8, 2018, Plaintiffs transmitted Plaintiff Bailey's supplemental production of "medical and billing records received to date relating to Plaintiff Jerry Bailey" in response to PCA's prior discovery requests. (Transmittal emails attached as Exhibits 2 & 3 *in globo*).

28. Included within the supplemental productions are two psychiatric reports from Patrick Hayes, M.D., diagnosing Plaintiffs Jerry Bailey and Michael McCullough with posttraumatic stress disorder.

29. In those reports, Dr. Hayes indicates that these diagnoses will likely prevent both Bailey and McCullough from working in their trained, preferred occupations due to industrial stimuli.

30. Dr. Hayes also forecasts the future medical treatment Plaintiffs Bailey and McCullough may require, as well as intermittent "symptom exacerbations:"

> 6) It is early in his care, but I anticipate, based on prior similar cases, after one to two years of acute and subacute stabilization, no fewer than quarterly psychiatric visits and no fewer than quarterly psychotherapy visits. I expect this care to last no less than 10 years. I predict symptom exacerbations every 2 to 3 years. However, as noted above, while he has apparently engaged in nine psychotherapeutic psychotherapy sessions, I have not yet seen him for his first psychiatric follow-up due to a forced cancellation in May.

(Dr. Hayes's Reports attached as Exhibits 4 & 5).

31. It was not until Removing Defendants received these reports that the extent of Plaintiffs Bailey's and McCullough's alleged posttraumatic stress diagnoses became clear. That is, upon receipt of these reports, Removing Defendants first learned that (1) Plaintiffs Bailey and McCullough claim they will likely be prevented from returning to work in their trained occupations, and further claim they will have to work to transition into non-industrial settings with limited educational background, and (2) Dr. Hayes, Plaintiffs Bailey's and McCullough's treating psychiatrist, indicates these individuals are expected to undergo "no less than" a decade of quarterly psychiatric visits and quarterly psychotherapy visits.

32. Cases from the Louisiana First Circuit Court of Appeal and the United States Court of Appeals for the Fifth Circuit indicate that general damages awards for posttraumatic stress disorder with prolonged treatment can extend well beyond the $75,000 jurisdictional threshold.

33. For instance, in *Nielsen v. Northbank Towing, Inc.,* No. 99-1118 (La. App. 1 Cir. 7/13/00), 768 So. 2d 145, a plaintiff was awarded $350,000 in general damages for posttraumatic stress disorder resulting from an on-the-job injury. The plaintiff's psychiatrist testified at his deposition that, after three years of treatment, the plaintiff was permanently and totally disabled from working in his job of injury and would need an additional two years of treatment. *Id.* at 161. Under the facts and circumstances of that case, the court of appeal held that the $350,000 award was neither abusively high nor abusively low. *Id.* Importantly, the state court proceeding in this case was filed in the 19th Judicial District Court which is located within the First Circuit Court of Appeal's jurisdiction.

34. Similarly, in *In re Parker Drilling Offshore USA, LLC*, 323 Fed. Appx. 330 (5th Cir. 2009), the Fifth Circuit affirmed a $200,000 general damages award for past, present, and future mental pain and suffering for posttraumatic stress disorder to a plaintiff who was diagnosed with posttraumatic stress disorder following an on-the-job injury. In that case, the Court relied on *Nielsen* as "the most comparable case." *Id.* at 334. Notably, in *In re Parker*, the plaintiff's PTSD lasted for three years following the injury.

35. In this case, Dr. Hayes's reports for Plaintiffs Bailey and McCullough, coupled with case law from the pertinent federal and state appellate courts, demonstrate by a preponderance of the evidence that the amount in controversy for either Bailey or McCullough's claims, individually, surpasses $75,000.00 exclusive of interests and costs. Not only are Plaintiffs Bailey and McCullough purportedly projected to undergo psychiatric treatment for several years *longer* than the *Nielsen* and *In re Parker* plaintiffs, they are supposedly similarly restricted from returning to their job because of their alleged injury(ies). It is more likely than not that the amount in controversy for either of these plaintiffs, considering special and general damages, will exceed

$75,000—an amount that is just over 20% of the general damages award affirmed on appeal in *Nielsen.*

**4. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the claims of Plaintiffs Johnson, Cunningham, Woodard, Darbonne, Benjamin, Green, Tibuni, and Harrington.**

36. Again, Plaintiffs Johnson, Cunningham, Woodard, Darbonne, Benjamin, Green, Tibuni, and Harrington are citizens of either Louisiana or Texas, and Removing Defendants are citizens of Illinois, Delaware, and Washington state.

37. Because this Court has original jurisdiction over the claims asserted by Plaintiffs McCullough and Bailey, this Court may exercise supplemental jurisdiction over the claims by the remaining Plaintiffs under 28 U.S.C. § 1367(a) because all claims arise out of the same case or controversy—the February 8, 2017, incident at PCA's DeRidder paper mill. *Thibodeaux v. GEICO Adv. Ins. Co.*, No. 16-158, 2016 WL 4055660, at *6 (M.D. La. July 8, 2016) (quoting *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 558 (2005)).

38. The exercise of supplemental jurisdiction in this case is not inconsistent with the jurisdictional requirements of 28 U.S.C. § 1332 because there is complete diversity between all Plaintiffs and Removing Defendants.

**B. This Notice of Removal has been timely filed.**

39. This Notice of Removal is timely because it was filed not more than 30 days after Removing Defendants received "other paper"—Plaintiffs McCullough's and Bailey's supplemental discovery responses—from which it was first ascertainable that the case is removable. 28 U.S.C. § 1446(b).  Similarly, the case has been removed less than one year from June 12, 2017, the date the action was commenced in state court.

40. "The 30-day time period in which a defendant must remove a case starts to run from defendant's receipt of initial pleading only when that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of minimum jurisdictional amount of federal courts. 28 U.S.C.A. § 1446(b)." *Chapman v. Powermatic, Inc*., 969 F.2d 160 (5th Cir. 1992); *Mumfrey v. CVS Pharmacy, Inc*., 719 F.3d 392, 399 (5th Cir. 2013) ("Ultimately, Chapman lays out a 'bright line rule requiring the plaintiff, if he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, to place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount.'").

41. "Under 28 U.S.C. § 1446(b), when an action is not initially removable, the defendant has 30 days after it receives a copy of 'other paper from which it may first be ascertained' that the case is or has become removable. The Fifth Circuit has indicated that the 'other paper' conversion requires a *voluntary act by the plaintiff. S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir. 1996) (internal citations omitted) (emphasis in original). The "other paper must be 'unequivocally clear and certain' to start the time limit running for a notice of removal under the second paragraph of section 1446(b). This clearer threshold promotes judicial economy. It should reduce 'protective' removals by defendants faced with an equivocal record. It should also discourage removals before their factual basis can be proven by a preponderance of the evidence through a simple and short statement of the facts. In short, a bright-line rule should create a fairer environment for plaintiffs and defendants." *Bosky v. Kroger Texas*, LP, 288 F.3d 208, 211 (5th Cir. 2002).

42. Neither the Original Petition, First Amended Petition, Second Amended Petition, nor the second Second Amended Petition (collectively referred to as "the Petitions") affirmatively states that any plaintiff's damages are in excess of the amount required for federal jurisdiction, as

required to trigger the removal deadline under Fifth Circuit precedent. *Chapman*, 969 F.2d at 160. The Petitions carefully state that "Plaintiffs' damages exceed the amount necessary for a jury and therefore Plaintiffs demand a trial by jury." (*See* Original Petition ¶ 32; First Amended Petition ¶ 33; first Second Amended Petition ¶ 34; and second Second Amended Petition ¶ 34.)  In Louisiana state court, the amount in controversy must exceed $50,000 to entitle parties to a trial by jury, not $75,000.  La. Code Civ. Pro. art. 1732.

43. Plaintiffs' vague allegations in their pleadings were similarly insufficient to make the amount in controversy "facially apparent." For instance, Plaintiffs' Petitions simply make allegations of "suffered severe and permanent injuries, including but not limited to burns, orthopedic injuries, posttraumatic stress disorder, and mental distress" untethered to any particular plaintiff or plaintiffs. (Original Petition ¶ 31; First Amended Petition ¶ 32; first Second Amended Petition ¶ 33; second Second Amended Petition ¶ 33). No specific allegations as to the person or persons alleging each injury is made; no allegations regarding the extent or severity of the particular injuries are made. This Court has held that similarly vague allegations did not satisfy the facially apparent standard for the amount in controversy. *See, e.g., Perritt v. Westlake Vinyls Co., LP¸* 986 F. Supp. 2d 726, 732–33 (M.D. La, 2013); *Lucas v. Methanex USA LLC*, No. 15-361, 2015 WL 4878258, at * (M.D. La. Aug. 10, 2015) (quoting *Bonck v. Marriot Hotels, Inc.*, 2002 WL 31890932 (E.D. La. 2002) ("When, as in the instant case, the petition is vague regarding the types of injuries incurred and any future problems resulting from the incident, 'the court must conclude that it was not 'facially apparent' that the amount of damages would exceed $75,000.").

44. Because the amount in controversy was not facially apparent from the Petitions, Removing Defendants' thirty-day time period to remove did not begin running upon receipt of any of the Petitions.

45. The supplemental discovery responses received from Plaintiffs Bailey and McCullough on May 7, 2018 and May 8, 2018, respectively, make unequivocally clear that the amount in controversy exceeds the $75,000 jurisdictional threshold. *See* Paragraphs 26–34, *supra*.

46. Plaintiffs' responses are a voluntary act by Plaintiffs that constitute the "other paper" pursuant to 28 U.S.C. § 1446(b). *See, e.g., Cole ex rel. Ellis v. Knowledge Learning Corp.,* 416 Fed. Appx. 437 (5th Cir. 2011) (citing, *e.g., S.W.S. Erectors, Inc.,* 72 F.3d at 494) ("A discovery response may constitute an 'other paper' under the federal removal statute, notifying defendant of an action's removability and triggering the 30-day removability period."); *S.W.S. Erectors,* 72 F.3d at 491-92, 494 (holding that time requirements for filing a notice of removal were triggered by the defendant's receipt of a transcript of the plaintiffs' president's deposition in which he testified that the actual damages fell between $70,000 and $80,000, when the minimum amount in controversy for diversity jurisdiction was $50,000).

47. Removing Defendants received a copy of Plaintiff McCullough's supplemental document production in the form of medical and billing records on May 7, 2018, and a copy of Plaintiff Bailey's supplemental document production on May 8, 2018. Accordingly, Removing Defendants had 30 days from their receipt of such "other paper" to file their notice of removal—bringing the deadline to remove based on Plaintiff McCullough's supplemental discovery responses to June 6, 2018, and the deadline to remove based on Plaintiff Bailey's supplemental discovery responses to June 7, 2018.

**C. All properly joined and served defendants consent to removal.**

48. PCA, Boise, Inc., and Boise P&N—the only properly joined and served defendants—join in this removal. *See* 28 U.S.C. § 1446(b)(2)(A). Rick Butterfield, although improperly joined, also joins in and consents to this removal.

49. The consent of Mr. Snelgrove is not required because, as set forth above, he is improperly joined. *See Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) (holding that applying the requirement that co-defendants consent to removal in cases alleging improper joinder "would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists."), *cert. denied*, 510 U.S. 828 (1993).

**D.  The Middle District of Louisiana is the proper venue.**

50. The 19th Judicial Court of East Baton Rouge, Louisiana is located within the Middle District of Louisiana.  28 U.S.C. §§ 1441(a); 98 (b).

51. The state proceeding may be removed to a federal court in the Middle District of Louisiana because complete diversity of citizenship exists between the properly-joined parties. 28 U.S.C. § 1441(b)(2). Plaintiffs are residents of either Louisiana or Texas while the only properly joined Defendants—PCA, Boise, Inc., and Boise P&N—are citizens of Delaware and Illinois. Rick Butterfield, while improperly joined, is also diverse as a citizen of Washington state.

**E.  Additional Procedural Matters**

52. A copy of this Notice of Removal is being served on Plaintiffs' attorney of record in the state proceeding and is being filed with the Clerk of the Parish of East Baton Rouge.  28 U.S.C. § 1446(d).

53. As required by Title 28, United States Code, Section 1446(a), PCA has attached the following:

    a.  An index of documents being filed (Exhibit 1);

    b.  The state court docket sheet for the state proceeding (Exhibit 6);

    c.  Complete copy of Suit Record (Exhibits 7-11);

    d.  A list of all counsel of record, including addresses, telephone numbers, and parties represented (Exhibit 12).

54. By filing this Notice of Removal, Removing Defendants do not waive, and hereby reserve all defenses to Plaintiffs' Petition, including but not limited to, failure to state a claim, lack of personal jurisdiction, improper venue and/or insufficiency of service of process.

### IV.    Conclusion

Defendants Packaging Corporation of America, Boise, Inc., Boise Packaging & Newsprint, LLC, and Rick Butterfield respectfully request that this Court enter such further orders and grant such further relief as may be necessary to secure the removal of the state proceeding from the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, to the United States District Court for the Middle District of Louisiana.

**WHEREFORE**, Defendants Packaging Corporation of America, Boise, Inc., Boise Packaging & Newsprint, LLC, and Rick Butterfield pray that this Notice of Removal be accepted by this Honorable Court as good and sufficient and that this Court will enter such orders as may be proper in the premises.

Respectfully submitted
By attorneys,

**BIENVENU, BONNECAZE, FOCO, VIATOR & HOLINGA, APLLC**

/s/ F. Charles Marionneaux
David M. Bienvenu, T.A. (#20700)
E-mail: david.bienvenu@bblawla.com
Lexi T. Holinga (#30096)
E-mail: lexi.holinga@bblawla.com
F. Charles Marionneaux (#18320)
E-mail: chip.marionneaux@bblawla.com
Patrick H. Hunt (#34599)
E-mail: patrick.hunt@bblawla.com
4210 Bluebonnet Blvd.
Baton Rouge, LA 70809
Phone: 225-388-5600
Fax: 225-388-5622

*COUNSEL FOR PACKAGING CORPORATION*
*OF AMERICA; BOISE, INC.; BOISE PACKAGING*
*& NEWSPRINT, LLC; AND RICK BUTTERFIELD*

## CERTIFICATE OF SERVICE

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this instrument via the USDC Middle District's CM/ECF system on this the 6th day of June 2018; and, that a true and accurate copy of this instrument was also served on counsel for Plaintiffs, via fax, at the following numbers, and/or via e-mail:

Counsel for plaintiff:

      J. Kyle Findley
      Kara Sellers
      Adam Lewis
      ARNOLD & ITKIN LLP
      6009 Memorial Drive
      Houston, Texas 77007
      Fax: (713) 222-3850

      A.M. "Tony" Clayton
      Michael P. Fruge
      Richard J. Ward, III
      CLAYTON, FRUGE & WARD
      3741 La. Highway 1 South
      Port Allen, Louisiana 70767
      Fax: (225) 383-7631

This the 6th day of June, 2018.

/s F. Charles Marionneaux
F. Charles Marionneaux