UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICHAEL JOHNSON, ET AL                  CIVIL ACTION NO.

VERSUS                  18-613-SDD-EWD

PACKAGING CORP. OF AMERICA, INC.,
ET AL.

### RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by Defendants, Packaging Corporation of America ("PCA"), Boise Inc., Boise Packaging & Newsprint ("BPN"), and Rick Butterfield ("Butterfield") (collectively "Defendants"). Plaintiffs, Michael Johnson, Charles Cunningham, Jerry Bailey, Eric Woodard, Michael Darbonne, Michael McCullough, Demon Benjamin, Pamela Green, and Christopher Harrington (collectively "Plaintiffs") filed an *Opposition*[2] to this *Motion*, to which Defendants filed a *Reply*.[3] For the following reasons, the Court finds that Defendants' *Motion* should be granted in part and denied in part.

### I. BACKGROUND

This is a workplace injury case. On February 8, 2017, an explosion occurred at a paper mill located in DeRidder, Louisiana.[4] The explosion was caused by welding above a foul condensate tank which ignited the volatile vapors in the tank. Two contractors, Elite

---

[1] Rec. Doc. No. 59.
[2] Rec. Doc. No. 65.
[3] Rec. Doc. No. 68.
[4] Rec. Doc. No. 59-2, p. 1; Rec. Doc. No. 65-8, p. 1.

67687

Specialty Welding, LLC ("Elite") and Top Deck, Inc. ("Top Deck") were contracted to perform work at the mill at the time of the explosion.[5] Demon Benjamin and Pamela Green worked for Top Deck, while the remaining Plaintiffs worked for Elite.[6] One of the Defendants owned the mill, but it is disputed which.

One of Defendants (it is disputed which) requested services from Top Deck and Elite via purchase orders. Top Deck and PCA had a "Master Service Agreement for Construction" that governed their working relationship.[7] Elite and BPN had an "Annual Contractor Services Agreement" that governed their working relationship.[8] Despite being titled "Annual," the Elite/BPN contract had no fixed term, and there is no dispute that it was in effect at the time of the explosion.[9] The other relevant contractual document is PCA's "Order Terms and Conditions," which is incorporated by reference into each purchase order.[10]

The relationships between Defendants are also relevant. According to Defendants, and uncontroverted by Plaintiffs, PCA acquired Boise Inc. and its subsidiaries, including BPN, in 2013.[11] On July 1, 2017, BPN and Boise Inc. merged into PCA.[12] Butterfield was the Safety Manager at the mill at the time of the accident, but it is disputed which Defendant was his employer.[13]

---

[5] Rec. Doc. No. 59-2, p. 1; Rec. Doc. No. 65-8, p. 2.
[6] Rec. Doc. No. 59-2, p. 1; Rec. Doc. No. 65-8, p. 1–2.
[7] Rec. Doc. No. 59-11, p. 1.
[8] Rec. Doc. No. 59-10, p. 1.
[9] *Id.* at p. 17–18.
[10] See Rec. Doc. Nos. 59-5; 59-8.
[11] Rec. Doc. No. 59-9, p. 2.
[12] *Id*. This merger is irrelevant to the Court's analysis. There is a "presumption of institutional independence" between related entities. *Diece-Lisa Indus., Inc. v. Disney Enterprises, Inc.*, 943 F.3d 239, 251 (5th Cir. 2019). Therefore, regardless of whether Defendants were about to merge, the fact that each existed as a separate entity with separate contractual capacities requires the Court to consider each entity's potential immunity from suit separately.
[13] Rec. Doc. No. 65-6, p. 3.

The only issue for the purposes of this *Motion* is whether Defendants are entitled to statutory employer immunity as to Plaintiffs. Plaintiffs assert tort claims against all Defendants. Defendants argue that they were the statutory employers of all Plaintiffs based on terms contained in the purchase orders, service agreements, and Terms and Conditions. Therefore, Defendants seek dismissal of all claims on the grounds that they are all immune from suit because they are all statutory employers of all Plaintiffs. However, as determined below, both groups of Plaintiffs were statutory employees of one of the Defendants—but not the others. Thus, some Defendants are immune from suit from some Plaintiffs, but no Defendant is immune from suit from every Plaintiff. Because Defendants' *Motion* does not go to the substance of any Plaintiffs' claims, the Court cannot reach any of the substantive issues in this case. Based on Defendants' requested relief, all the Court determines today is that the Elite Plaintiffs can sue Boise Inc. and PCA—but not BPN; and, the Top Deck Plaintiffs can sue BPN and Boise Inc—but not PCA.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[14] This determination is made "in the light most favorable to the opposing party."[15] A party moving for summary judgment "'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the

---

[14] FED. R. CIV. P. 56(a).
[15] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).

67687

nonmovant's case.'"[16] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[17] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[18]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[19] All reasonable factual inferences are drawn in favor of the nonmoving party.[20] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[21] "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiffs [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'"[22]

### B. Louisiana's Statutory Employer Immunity[23]

The success of Defendants' *Motion* turns on the applicability of statutory employer

---

[16] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).
[17] *Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[18] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).
[19] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[20] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[21] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[22] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).
[23] This Court applies Louisiana law sitting in diversity.

immunity. Under Louisiana's Workers' Compensation Law, when a "principal" hires a contractor to perform work that is "a part" of the principal's "trade, business, or occupation," the principal is liable to pay workers' compensation benefits to any injured employee of the contractor.[24] In such instances, the principal is commonly referred to as the "statutory employer." In exchange for the responsibility placed on statutory employers, the statute affords them immunity from tort liability to their statutory employees.[25] Thus, a principal is immune from tort liability if the contract work was a part of the principal's trade, business, or occupation.[26] The law further provides that a written contract establishes a rebuttable presumption of a statutory employee-employer relationship, which may be defeated by showing that "the work being performed is not an integral part of or essential to the ability of the principal to generate the individual principal's goods, products, or services."[27] Statutory employer immunity does not apply if the principal "intentionally" caused the injury.[28]

As to Butterfield, the Safety Manager at the mill, it is relevant that workers' compensation benefits "are a statutory employee's exclusive remedy when injured by employees of the principal…."[29]

1. Analysis of Contract Documents

Plaintiffs assert that Defendants cannot connect a purchase order to each individual Plaintiff, and as such, Defendants cannot carry their burden of establishing that there is no genuine issue of material fact as to whether they are entitled to statutory

---

[24] La. R.S. § 23:1061.
[25] La. R.S. § 23:1032.
[26] *Salsbury v. Hood Indus., Inc.*, 982 F.2d 912, 913–14 (5th Cir. 1993).
[27] La. R.S. § 23:1061(A)(3).
[28] La. R.S. § 1032(B).
[29] *Johnson v. Alexander*, 419 So. 2d 451, 454 (La. 1982).

employer immunity.[30] Defendants do not dispute this, and instead counter that every purchase order either has or incorporates statutory employer language, so regardless of which one applies, they are entitled to statutory employer protection.[31]

Plaintiffs assert that there is a factual dispute as to which entity issued the purchase orders.[32] Defendants proffer the purchase orders as summary judgment evidence that PCA issued them. Each purchase order bears a PCA logo in the lower-left hand corner. Each states that it is subject to PCA's Terms and Conditions. Contact information for a PCA employee is in the bottom right of each purchase order. Finally, each purchase order provides a PCA email address as contact information for invoicing. While some of the purchase orders direct the vendor to send the invoice to BPN, each one that does so explains the corporate relationship between PCA and BPN and states that the purchase order is executed by "Packaging Corporation of America and its wholly-owned subsidiary Boise Packaging & Newsprint, LLC."[33] The Court finds that Defendants have produced summary judgment evidence that no genuine issue of material fact exists that PCA issued the purchase orders.

Plaintiffs attempt to create a genuine issue of material fact with summary judgment evidence that BPN owned the mill and employed nearly all onsite workers.[34] As such, argue Plaintiffs, it is unclear who issued the purchase orders. The purchase orders' veracity is undisputed, and based on the face of each purchase order, there are no indications that they were issued by any entity other than PCA. The Court finds that no

---

[30] Rec. Doc. No. 65.
[31] Rec. Doc. No. 68, p. 1.
[32] Rec. Doc. No. 65-8, p. 2.
[33] See Rec. Doc. No. 59-8, p. 1–10.
[34] *Id*. See appropriate citations to the record therein.

67687

rational trier of fact could find that PCA did not issue the purchase orders, regardless of which entity technically employed most of the mill employees.[35]

Next, the Court must detangle the complex interactions between the purchase orders, service agreements, and PCA's Terms and Conditions. The goal of contract interpretation is to determine the objective common intent of the parties.[36] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[37] Contracts should be interpreted to give effect to each provision.[38] "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."[39] Specific provisions control over general.[40]

The Court finds that there is only one reasonable interpretation of the documents, so the issue is ripe for summary judgment.[41] Every purchase order purports to incorporate the Terms and Conditions.[42] The Terms and Conditions document specifies that "PCA," which is defined to include PCA's wholly owned subsidiary BPN, is considered a statutory employer under Louisiana law.[43] However, the Terms and Conditions document also specifies that it applies to all purchases "unless the parties have entered into a mutually executed written master agreement stating applicable terms and conditions."[44] While the

---

[35] *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) (internal citations omitted).
[36] La. Civ. Code art. 2045, cmt (b).
[37] La. Civ. Code art. 2046; See *Maloney v. Oak Builders, Inc*., 235 So.2d 386 (1970).
[38] La. Civ. Code art. 2049.
[39] La. Civ. Code art. 2050.
[40] *Mixon v. St. Paul Fire & Marine Ins. Co. of St. Paul, Minn*., 147 La. 302, 306, 84 So. 790, 791 (1920); *Master Craft Constr., LLC v. Pronoun, Inc*., 2017-569 (La. App. 3 Cir. 2017), 258 So. 3d 802, 807.
[41] *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004).
[42] See Rec. Doc. No. 59-8.
[43] Rec. Doc. No. 59-6, p. 1–7.
[44] *Id*. at 1.

67687

Terms and Conditions document does not define "master agreement," a workable definition is "an agreement to abide by certain terms if the parties agree to do something in the future."[45] Both the "Annual Contractor Services Agreement" (the "ACSA") between BPN and Elite and the "Master Service Agreement for Construction" (the "MSAC") between PCA and Top Deck meet this definition.[46] The purchase orders refer to documents termed "master service agreements" that were executed on the same days as the ACSA and MSAC, and the Court finds that no rational trier of fact could find that the ACSA and MSAC are not the "master service agreements" contemplated in the purchase orders.[47] Therefore, because there were master service agreements in place between Elite and BPN and PCA and Top Deck, the Terms and Conditions, by its own terms, does not apply.

### a. Top Deck Plaintiffs

Turning to the MSAC between Top Deck and PCA, it states that it is "automatically incorporated into and made part of any purchase order."[48] It further provides that the parties "mutually agree that it is their intention to recognize PCA as the statutory employer of [Top Deck's] employees…" Plaintiffs admit that the work on the day of the explosion was "an integral part of" Defendants' ability to produce their goods, so Plaintiffs cannot rebut the presumption of statutory employer immunity.[49] Hence, PCA is entitled to statutory employer immunity as to those Plaintiffs.

However, the same does not hold true for Boise Inc. and BPN. While some of the

---

[45] *Moser v. Aminoil, U.S.A., Inc.*, 618 F. Supp. 774, 779 (W.D. La. 1985).
[46] See Rec. Doc. Nos. 59-10; 59-11.
[47] Rec. Doc. No. 59-8, p. 1–43.
[48] Rec. Doc. No. 59-11, p. 2.
[49] Rec. Doc. No. 65-8, p. 3; La. R.S. § 23:1061(A)(3).

purchase orders extend statutory employer protection to "PCA/Boise,"[50] others do not. Because Defendants do not identify which purchase order the Top Deck employees were working under at the time of their alleged injuries, the Court is unable to determine if solely PCA or both PCA and "Boise" are entitled to statutory employer immunity. Therefore, BPN and Boise Inc. are not entitled to summary judgment on their potential statutory employer immunity as to the Top Deck Plaintiffs.

### b. Elite Plaintiffs

Turning to the ACSA between Elite and BPN, it provides that "[t]he terms of this [a]greement shall apply to all Work pursuant to purchase orders issued hereunder and any conflicting or additional terms and conditions on any issued 'purchase order shall have no force or effect.'"[51] The ACSA continues "[the parties] mutually agree that it is their intention to recognize [BPN] as the statutory employer of [Elite's] employees…."[52] Plaintiffs admit that the work on the day of the explosion was "an integral part of" Defendants' ability to produce their goods, so Plaintiff cannot rebut the presumption of statutory employer immunity.[53] Hence, BPN is entitled to statutory employer immunity as to those Plaintiffs.

The Elite purchase orders incorporate the terms of the ACSA: "[t]his purchase order is governed by the master service agreement for construction dated 8/18/14 currently in effect between the purchase order vendor and Packaging Corporation of America. The master service agreement is a part of this order."[54] As discussed above,

---

[50] See e.g. Rec. Doc. No. 59-8, p. 4.
[51] Rec. Doc. No. 59-10, p. 1.
[52] *Id*. at 19.
[53] Rec. Doc. No. 65-8, p. 3; La. R.S. § 23:1061(A)(3).
[54] Rec. Doc. No. 59-8, p. 19–43.

67687

the ACSA was between BPN and Elite—PCA was not involved. The ACSA's incorporation into the purchase orders therefore cannot confer statutory employer immunity on PCA. Additionally, the Elite purchase orders do not purport to convey statutory employer immunity by themselves. In sum, BPN is entitled to statutory employer immunity as to the Elite Plaintiffs, but Boise Inc. and PCA are not.

2. Application of the Intentional Act Exception

Notwithstanding the identity of each Plaintiff's statutory employer, Plaintiffs claim that no Defendant is entitled to statutory employer immunity because the intentional act exception applies. The intentional act exception provides that an employee may sue in tort to recover beyond worker's compensation benefits when the injury is proximately caused by the employer's intentional act.[55] The exception requires that the person acting and causing injury must either: (1) "consciously desire[] the physical result of his act, whatever the likelihood of that result happening from his conduct", or (2) "know[] that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result."[56] The focus is on the consequences of the act rather than the act itself: "[o]nly where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional."[57]

A plaintiff's burden "for showing the elements of an employer's intentional act within the meaning of the statutory exception is exacting,"[58] "and Louisiana courts, as well

---

[55] *Reeves v. Structural Pres. Sys.*, 731 So.2d 208, 210 (La. 1999); *Danos v. Boh Bros. Const. Co., LLC*, 132 So. 3d 958, 959 (La. 2014); La. R.S. § 23:1032(b).
[56] *Id*. at 481; *see also White v. Monsanto Co.*, 585 So.2d 1205, 1208 (La. 1991); *Reeves,* 731 So.2d at 211; *Danos*, 132 So. 3d at 959.
[57] *White*, 585 So.2d at 1208.
[58] *Hodges v. The Mosaic Co.,* No. 05-5201, 2007 WL 2008503, at *4 (E.D. La. July 6, 2007).

67687

as federal courts sitting in diversity, have consistently noted that the intentional act exception is to be narrowly interpreted."[59] As such, the standard for prevailing on a claim of intentional act under Louisiana law is "extremely high."[60] "Even knowledge of a high degree of probability that injury will occur is insufficient to establish that the employer was substantially certain that injury would occur so as to impute intent to him within the intentional tort exception to the worker's compensation statute exclusive remedy provisions."[61] Therefore, "[s]ubstantial certainty requires more than a reasonable probability that an injury will occur; this term has been interpreted as being equivalent to inevitable, virtually sure and incapable of failing."[62]

"Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering the claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work, this still falls short of the kind of actual intention to injure that robs the injury of accidental character."[63] Mere knowledge and appreciation of risk alone do not constitute intent.[64] Furthermore, even an employer's knowledge that a situation is

---

[59] *Chiasson v. Hexion Specialty Chemicals, Inc.*, No. 11-0959, 2012 WL 3683542, at *6 (E.D. La. Aug. 27, 2012)(citing *e.g., Reeves*, 731 So.2d at 211-12 (citations omitted); *Cole v. State, Dep't of Public Safety & Corrections*, 2001-2123 (La. 9/4/02), 825 So.2d 1134, 1140-41; *Snow v. Lenox Int'l*, 27,533 (La.App. 2 Cir. 11/1/95), 662 So.2d 818, 820; *Rogers v. La. Dept. of Corrections*, 43,000 (La.App. 2 Cir. 4/30/08), 982 So.2d 252, 259, *writ denied*, 992 So.2d 931 (La. 2008); *Bridges v. Carl E. Woodward, Inc.*, 94-2675 (La.App. 4 Cir. 10/12/95), 663 So.2d 458, *writ denied*, 666 So.2d 674 (La. 1996); *Guillory v. Dorntar Indus., Inc.*, 95 F.3d 1320 (5th Cir. 1996); *Dark v. Georgia-Pacific Corp.*, 176 Fed. App'x 569 (5th Cir. 2006)).
[60] *Wilson v. Kirby Corporation*, No. 12-0080, 2012 WL 1565415, at *2 (E.D. La. May 1, 2012).
[61] *Id.* (citing *King v. Schulykill Metals Corporation*, 581 So.2d 300, 303 (La. App. 1 Cir. 1991)).
[62] *Id.* (quoting *King*, 581 So.2d at 302 (internal citations omitted)).
[63] *Reeves*, 731 So.2d at 210 (quotation omitted); *Danos v. Boh Bros. Const. Co., LLC*, 132 So. 3d 958, 959 (La. 2014); *see also Micele v. CPC of Louisiana, Inc.*, 709 So.2d 1065 (La. App. 4 Cir. 1998) (noting that courts in Louisiana "have cautioned that the intentional tort exception should be narrowly construed, holding that mere knowledge and appreciation of a risk does not constitute intent; reckless or wanton conduct, gross negligence, disregard of safety regulations or the failure to use safety equipment by an employer does not constitute intentional wrongdoing") (citations omitted)).
[64] *Williams v. Gervais F. Favrot Co.*, 573 So.2d 533 (La.App. 4 Cir. 1991), *writ denied*, 576 So.2d 49 (La. 1991).

dangerous does not give rise to substantial certainty that injury will result.[65] "[B]elieving that someone may, or even probably will, eventually get hurt if the workplace practices continue does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation."[66] Moreover, even knowledge that similar injuries have occurred in the past does not establish that injury is substantially certain to occur in the future,[67] and violations of safety standards are generally insufficient to fulfill the substantial certainty requirement.[68] Likewise, "actions which lead to a 'high probability' of injury do not rise to the level of substantial certainty, and even where acts or omissions constitute gross negligence, the substantial certainty exception is not met."[69]

Plaintiffs' argument is cleverly reduced to the assertion that "[e]xplosions inevitably result from the combination of fuel, oxygen, and an ignition source."[70] Plaintiffs cite the deposition of Lori Smith, a mechanical maintenance planner at the DeRidder mill.[71] Smith testified that foul condensate, which was in the tank that exploded, is flammable.[72] Similarly, Bob Ross, Director of Safety and Health for the containerboard mills for PCA, testified that it was known that the fuel condensate tank had not been emptied before the

---

[65] *Id.* (citing *Marino v. Martin's Oil Country Tubular, Inc.,* 931 So.2d 1089, 1090 (La. 2006) (citing *Armstead v. Schwegmann Giant Super Markets, Inc.*, 618 So.2d 1140 (La.App. 4 Cir. 1993), *writ denied*, 629 So.2d 347 (La. 1993)); *see also Guillory*, 95 F.3d at 1327 ("The substantial certainty test is satisfied when an employer consciously subjects an employee to a hazardous or defective work environment where injury to the employee is nearly inevitable.")).
[66] *Dark*, 176 Fed. App'x at 571 (quoting *Reeves*, 731 So.2d at 211-12).
[67] *Snow*, 662 So.2d at 820.
[68] *Reeves,* 731 So.2d at 211; *Danos v. Boh Bros. Const. Co., LLC*, 132 So. 3d 958, 959 (La. 2014).
[69] *Chaisson,* at *6, (quoting *Guillory*, 95 F.3d at 1327-28 (finding that even where some employees and supervisors were aware that several forks had detached from forklifts and some employees knew that subject forklift had fallen off, the evidence established only, at best, negligence)).
[70] Rec. Doc. No. 65, p. 15.
[71] Rec. Doc. No. 65-3, p. 12.
[72] *Id*. at 16.

welding was performed around it.[73]

Plaintiffs assert that Defendants knew that oxygen could enter the tank. The tank was fitted with a valve to allow oxygen to flow in and out as the pressure within the tank required, and Ross testified that this feature was known to Defendants.[74] This would have allowed oxygen to get inside the tank. Ross also testified that the "vacuum breaker" in the tank would eject gasses if the pressure within the tank rose.[75] Plaintiffs aver that this method of operating the tank violated an industry standard.[76]

Plaintiffs contend that Defendants knew there would be welding above the tank and that the welding was the cause of the explosion. Ross testified that the welding above the tank was believed to be the cause of the explosion.[77] Smith testified that Defendants knew that the welding would occur on a clean condensate line a few feet above the foul condensate tank.[78] Plaintiffs also cite to numerous other similar accidents that PCA's representatives knew or should have known of, including one at a different PCA plant.[79]

In sum, Plaintiffs contend that all of the components of an explosion—fuel, ignition source, oxygen—were present at the time of the explosion. Plaintiffs impute the knowledge of the presence of those elements to Defendants based on the statements of Defendants' employees. According to Plaintiff, since Defendants knew that the gasses in the foul condensate tank were flammable, knew oxygen could enter the tank, and knew that welding would occur above the tank, they knew that the explosion was inevitable. Plaintiffs' proffered expert opines that "multiple actions by PCA and [BPN] created

---

[73] Rec. Doc. No. 65-5, p. 11.
[74] *Id*. at 13–14.
[75] *Id*.
[76] Rec. Doc. No. 65, p. 18.
[77] Rec. Doc. No. 65-4, p. 31.
[78] Rec. Doc. No. 65-3, p. 19–26.
[79] Rec. Doc. No. 65, p. 21–23.

circumstances where the explosion of the [foul condensate tank] was within reasonable engineering probability and substantially certain to occur."[80]

Defendants counter that Smith also testified that she was not aware that the foul condensate tank would explode.[81] Ross testified that the foul condensate tank was normally kept in a state that prevented its contents from becoming explosive.[82] He also testified that "[he] did not think that PCA believed there was any potential for explosion hazards to develop in the foul condensate tank."[83] Defendants also point out a critical flaw in Plaintiffs' argument: Plaintiffs offer no evidence that anyone at the DeRidder mill knew the foul condensate tank was in fact explosive, as opposed to potentially explosive, during the welding.

Defendants assail the opinion of Plaintiffs' proffered expert Dale L. Goynes. According to Defendants, Goynes' conclusion that the explosion was "substantially certain" is premised on the notion that it is scientifically certain that the combination of fuel, oxygen, and an ignition source will cause an explosion.[84] Defendants argue that Goynes does not adequately explain how those three elements combined. Defendants also seem to suggest that a particular individual had to know that the explosion was "inevitable, virtually sure and incapable of failing" such that the collective knowledge of multiple individuals cannot be imputed to Defendants.[85]

The Court concludes that Plaintiffs have not met their burden of establishing that there is a genuine issue of material fact as to whether Defendants "intended" the

---

[80] Rec. Doc. No. 65-1, p. 3.
[81] Rec. Doc. No. 65-3, p. 33–34.
[82] Rec. Doc. No. 65-5, p. 52–53.
[83] *Id*. at 52–53.
[84] Rec. Doc. No. 68, p. 13.
[85] *Id*. at 15.

67687

explosion to occur within the meaning of the exception. Assuming *arguendo* that Defendants, in spite of their separate corporate personalities, can be charged with the collective knowledge of each employee, Plaintiffs' summary judgment evidence only establishes that Defendants knew that fuel, oxygen, and an ignition source would be near each other. Plaintiffs have not shown, however, that Defendants were "substantially certain" that the explosion would occur. As the Louisiana supreme court recently restated, "the substantial certainty requirement has been held to require more than a mere probability of injury; rather, injury must be inevitable. The mere knowledge that a procedure is dangerous, and that its use creates a high probability that someone will eventually be injured, is not sufficient to meet the substantial certainty requirement."[86] "Further, mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing."[87] Plaintiffs fall short of introducing summary judgment evidence sufficient for a rational fact-finder to find that this burden has been met because Plaintiffs only present evidence that Defendants collectively knew that the ingredients of an explosion were present—not that they would interact. Plaintiffs' "explosion triangle" is thus incomplete because Plaintiffs have not produced evidence that shows that Defendants were substantially certain that the elements of that triangle would coalesce. More specifically, Plaintiffs have not produced evidence that Defendants were substantially certain that either the foul condensate tank would inevitably release gasses at the time of the welding[88] or that the foul condensate tank would intake oxygen (and a spark) at the time of the welding.

---

[86] *Danos v. Boh Bros. Const. Co., LLC*, 132 So. 3d 958, 960 (La. 2014).
[87] *Id.* (internal citations omitted).
[88] Thereby combining with the oxygen in the air and ignition source from the welding.

67687

Plaintiffs have only shown that Defendants knew that there was the potential for the release of gas or intake of oxygen, not that Defendants were substantially certain that either of those things would inevitably occur at the exact time there was an ignition source produced by the welding. For better or worse, the Louisiana Legislature has set an extremely high bar for a plaintiff to surmount the intentional act exception, and Plaintiffs have not made this leap on the current record.

### 3. The Identity of Butterfield's Employer

This issue is important because Butterfield, the Safety Manager at the mill, may be immune from suit depending on which entity employed him.[89] Butterfield stated in his affidavit that he was employed by PCA.[90] Plaintiffs assert that the identity of Butterfield's employer is a disputed factual issue based on the deposition testimony of Tony Steenkolk, PCA's deputy general counsel.[91] Steenkolk testified that nearly all the workers at the mill (538 out of 555) were employed by BPN, but "[e]veryone there considered themselves PCA employees."[92] On this basis, Plaintiffs assert that summary judgment as to the identity of Butterfield's employer is inappropriate.

On the current record, which lacks objective documentation such as employment records, the Court finds that summary judgment is inappropriate. Butterfield's statement as to his employer is unequivocal, but Steenkolk's testimony raises the possibility that Butterfield may have "considered" himself a PCA employee while technically being employed by BPN. The Court does not make credibility determinations at the summary

---

[89] *Johnson v. Alexander*, 419 So. 2d 451, 454 (La. 1982).
[90] Rec. Doc. No. 65-6, p. 3 ("In 2016, I went to work for Packaging Corporation of America ("PCA"). I have been employed as Safety Manager at PCA's containerboard Mill in Deridder, Louisiana since August 2016.").
[91] Rec. Doc. No. 65-2, p. 4.
[92] *Id*. at 28–29.

judgment stage[93] and resolving this dispute would require the Court to determine whether Butterfield was mistaken in asserting that he was a PCA employee. Therefore, the Court cannot determine at this juncture which Plaintiffs, if any, cannot sue Butterfield because of his status as an employee of an entity entitled to statutory employer immunity.

### III. CONCLUSION

In conclusion, PCA, but not BPN and Boise Inc., was the statutory employer of the Top Deck Plaintiffs at the relevant time. Defendants' *Motion*[94] is therefore granted as to PCA and the Top Deck Plaintiffs, but denied as to BPN and Boise Inc.

BPN, but not PCA and Boise Inc., was the statutory employer of the Elite Plaintiffs at the relevant time. Defendants' *Motion*[95] is therefore granted as to BPN and the Elite Plaintiffs, but denied as to PCA and Boise Inc.

Defendants' *Motion*[96] is denied as to Butterfield because the identity of his employer cannot be ascertained at this juncture.

Defendants' *Motion*[97] is granted as to the intentional act exception as to all Plaintiffs.

---

[93] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986).
[94] Rec. Doc. No. 59.
[95] *Id*.
[96] *Id*.
[97] *Id.*

For the foregoing reasons, Defendants' *Motion*[98] is **GRANTED in part and DENIED in part.**

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>July 27, 2021</u>.

*[signature: Shelly D. Dick]*

**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[98] *Id.*

67687