UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICHAEL JOHNSON, ET AL.

CIVIL ACTION

VERSUS

18-613-SDD-EWD

PACKAGING CORPORATION
OF AMERICA, ET AL.

**RULING**

This matter is before the Court on the *Motion to Reconsider Ruling on Motion for Summary Judgment and, Alternatively, Certification for Interlocutory Appeal*[1] filed by Defendants, Packaging Corporation of America ("PCA"), Boise Inc. ("Boise"), Boise Packaging & Newsprint LLC ("BPN"), and Rick Butterfield ("Butterfield") (collectively "Defendants"). Plaintiffs, Michael Johnson, Charles Cunningham, Jerry Bailey, Eric Woodard, Michael Darbonne, Michael McCullough, Demon Benjamin, Pamela Green, and Christopher Harrington (collectively "Plaintiffs") filed an *Opposition*.[2] For the reasons that follow, Defendants' *Motion* shall be granted in part.

I.   BACKGROUND INFORMATION

This is a workplace injury case. In February 2017, two contractors, Elite Specialty Welding, LLC ("Elite") and Top Deck, Inc. ("Top Deck"), were working at a paper mill owned by one of the Defendants.[3] The work was pursuant to purchase orders issued by

---

[1] Rec. Doc. No. 77.
[2] Rec. Doc. No. 41.
[3] It is disputed which.

1

PCA.[4] Demon Benjamin and Pamela Green worked for Top Deck; the other Plaintiffs worked for Elite.[5] Part of the work required welding above a foul condensate tank.[6] The welding caused the vapors inside the tank to ignite, which caused an explosion that Plaintiffs assert injured them.[7]

Defendants argued in their *Motion for Summary Judgment*[8] that they were the statutory employers of all Plaintiffs, and therefore immune from suit.[9] In support of their argument, Defendants pointed to PCA's Terms & Conditions,[10] which are incorporated into every purchase order.[11] As Defendants pointed out, PCA's Terms & Conditions provides that "PCA" (which is defined to include BPN and Boise) will be considered the statutory employer of anyone employed by a contractor that PCA contracts with.[12] However, the PCA Terms & Conditions also contains the following provision: "Purchases by [PCA and its subsidiaries and affiliates] are governed by these Terms & Conditions, *unless the parties have entered into a mutually executed written master agreement stating applicable Terms & Conditions.*"[13] Some of the parties had master service agreements in effect.

---

[4] Rec. Doc. No. 72, p. 6–7. The parties dispute which defendant owned the mill. The Court found that there was no genuine issue of material fact as to who issued the purchase orders. *Id*. at 6–7.
[5] *Id.* at 2.
[6] *Id.* at 1.
[7] *Id.*
[8] Rec. Doc. No. 59.
[9] The provisions of the Louisiana Workers' Compensation Act extend the Act's coverage to statutory employers. "Simply put, a statutory employer/employee relationship can arise when, in conformance with La. Rev. Stat. § 23:1061, a principal hires a contractor to perform services that are part of the principal's business; in this situation, the principal can become the statutory employer of the contractor's employees." *Nielsen v. Graphic Packaging Int'l, Inc.*, 469 F. App'x 305, 307 (5th Cir. 2012).
[10] Rec. Doc. No. 59-6.
[11] Rec. Doc. No. 59-8.
[12] Rec. Doc. No. 59-6, p. 4.
[13] *Id.* at 1. (emphasis added).

BPN and Elite had executed an "Annual Contractor Services Agreement" (the "ASCA"), and PCA and Top Deck had executed a "Master Service Agreement for Construction" (the "MSAC").[14] The purchase orders at issue all referred to "master service agreements" that were executed on the same days as the ACSA and MSAC, and the Court held that no reasonable factfinder could find that the ACSA and MSAC were not the "master service agreements" mentioned in the purchase orders.[15] Therefore, the Court excluded the PCA Terms & Conditions from the Court's analysis based on the Terms & Conditions' negation of its own applicability.[16]

Both the ACSA and MSAC granted statutory employer status to at least one Defendant. The MSAC stated that PCA was recognized as the statutory employer of Top Deck's employees but did not extend the same privilege to Boise and BPN.[17] And while some of the Top Deck–PCA purchase orders extended statutory employer protection to "PCA/Boise,"[18] Defendants have not identified which purchase order the Top Deck employees were working under at the time of the explosion.[19] Therefore, the Court held that, as to the Top Deck Plaintiffs, PCA was entitled to summary judgment on statutory employer immunity but Boise and BPN were not. The ACSA between Elite and BPN recognized BPN as the statutory employer of Elite's employees but not Boise and PCA.[20] Therefore, as to the Elite Plaintiffs, the Court held that BPN was entitled to summary judgment on statutory employer immunity, but PCA and Boise were not.

---

[14] Rec. Doc. No. 72, p. 8.
[15] *Id*.
[16] *Id*.
[17] *Id*. (citing Rec. Doc. No. 59-11, p. 2).
[18] See e.g., Rec. Doc. No. 59-8, p. 4.
[19] Rec. Doc. No. 72, p. 9.
[20] Rec. Doc. No. 59-10, p. 1.

Defendants also argued that Butterfield, as an employee of either PCA or BPN, enjoyed statutory immunity as well.[21] The Court denied summary judgment, finding that there was an unresolved factual issue as to which entity was Butterfield's employer.

## II.    THE PARTIES' ARGUMENTS

### A.  The Elite Plaintiffs

Defendants focus on the clause of the PCA Terms & Conditions that negates its applicability. To reiterate, the PCA Terms & Conditions provides: "Purchases by [PCA and its subsidiaries and affiliates] are governed by these Terms & Conditions, unless the parties have entered into a mutually executed written master agreement stating applicable Terms & Conditions."[22] Defendants' argument turns on the meaning of the word "parties." Defendants urge that "parties" refers to the parties to the purchase orders.[23] So, per Defendants' interpretation, the parties to the relevant purchase order must have entered into a master services agreement for the Terms & Conditions to not apply. The parties to the purchase orders were PCA and Elite, and the parties to the ACSA were Elite and BPN. Thus, Defendants argue, since PCA is not a party to the ASCA, the ACSA does not apply to the purchase orders between Elite and PCA. Therefore, argue Defendants, the PCA Terms & Conditions applies, and all Defendants are statutory employers of the Elite Plaintiffs.

Plaintiffs focus on the language of the purchase orders. The relevant purchase orders all provide in part: "This purchase order is governed by a master service agreement for construction dated 8/18/14 currently in effect between the purchase order vender and

---

[21] La. R.S. 23:1032(b); *Johnson v. Alexander*, 419 So. 2d 451, 454 (La. 1982).
[22] Rec. Doc. No. 59-6, p. 1.
[23] Rec. Doc. No. 77-1, p. 4.

[PCA]. The master service agreement is a part of this purchase order."[24] The Court held that no reasonable factfinder could find that the master service agreement referred to in the purchase order was not the ASCA.[25] Next, Plaintiffs point to a provision of the ACSA that provides: "[t]he terms of this [a]greement shall apply to all [w]ork performed pursuant to [p]urchase [o]rders issued hereunder and any conflicting or additional Terms & Conditions on any issued [p]urchase [o]rder shall have no force or effect."[26] Plaintiffs argue that the grant of statutory employer status in the PCA Terms & Conditions is a conflicting and additional term since the ASCA only confers statutory employer status to BNP. It follows, argue Plaintiffs, that both under the PCA Terms & Conditions and the ASCA, the Terms & Conditions is without effect.

Defendants alternatively request that this Court certify this case for interlocutory appeal so that it can be considered alongside the Fifth Circuit case *Rolls v. Packaging Corp. of America*.[27] The Fifth Circuit has issued an opinion in *Rolls*,[28] and the Court addresses that opinion below.

### B. The Top Deck Plaintiffs

Defendants concede that the MSAC between PCA and Top Deck applies to the purchase orders.[29] However, Defendants argue that the purchase orders are part and parcel of the global agreement between PCA and Top Deck, citing the following provision of the MSAC: "[t]his [a]greement consists of the contract documents listed below…[t]he

---

[24] See e.g., Rec. Doc. No. 59-8, p. 40.
[25] *Id*. at 8.
[26] Rec. Doc. No. 59-10, p. 1.
[27] *Rolls on behalf of A. R. v. Packaging Corp. of Am. Inc.*, No. 21-30435, 2022 WL 1560368 (5th Cir. May 18, 2022).
[28] *Id.*
[29] Rec. Doc. No. 77-1, p. 6.

applicable [p]urchase [o]rder…"[30] Further, the MSAC provides that "[t]he [c]ontract [d]ocuments are complementary, and what is called for by any one of them is binding as if required by all."[31] Therefore, argue Defendants, "the purchase orders' incorporation of the PCA Terms & Conditions is binding to the extent the Terms & Conditions does not conflict with the provisions of the MSAC…."[32] Defendants posit that the Terms & Conditions' provision that affords statutory employer status to Boise and BPN is complementary, rather than conflicting, so it applies.

Plaintiffs disagree with Defendants' interpretation. Plaintiffs point out that the PCA Terms & Conditions unambiguously states that it does not apply if there is a master service agreement in place.[33] Further, the relevant purchase orders provide: "[t]erms and conditions per current master service agreement for construction (MSAFC) dated 8/4/2015 on file."[34] And finally, the MSAC recognizes only PCA as the statutory employer of Top Deck employees.[35]

### C. Butterfield

Defendants urge that since all of the corporate defendants have statutory employer immunity, it is irrelevant which entity was Butterfield's employer. Plaintiffs counter that Defendants have not shown that all of the corporate defendants have statutory employer immunity; therefore, the disputed fact of who is Butterfield's employer prevents summary judgment.

---

[30] Rec. Doc. No. 59-11, p. 3–4.
[31] *Id.* at 4.
[32] Rec. Doc. No. 77-1, p. 8.
[33] Rec. Doc. No. 80, p. 10.
[34] See e.g., Rec. Doc. No. 59-8, p. 18.
[35] Rec. No. 80, p. 10.

## III.    LAW AND ANALYSIS

Defendants urge the Court to reconsider its *Ruling* under Fed. R. Civ. P. 54(b). Under Fed. R. Civ. P. 54(b), the Court "retains jurisdiction over all the claims in a suit and may alter any earlier decision at its discretion until final judgment has been issued on a claim or on the case as a whole."[36] Although the standards for reconsideration under Fed. R. Civ. P. 54(b) are less strenuous than under Fed. R. Civ. P. 59(e), both require a finding of, *inter alia*, a manifest error of fact or law. Defendants urge that the Court made several manifest errors of law.

The principles of contract interpretation are well-defined. "Interpretation of a contract is the determination of the common intent of the parties."[37] The Court must give the contract terms their "plain, ordinary, and generally accepted meeting unless the contract provides more specialized one."[38] Further, "[a] provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."[39] "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."[40] A subset of principles governs the treatment of contracts at the summary judgment stage.

First, the Court must answer the legal question of whether the contract is ambiguous. If the contract is unambiguous, the Court may interpret it as a matter of law.[41]

---

[36] *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475 (M.D. La. 2002).
[37] La. Civ. Code art. 2045.
[38] *Tucker Mgmt. LLC v. United Nat'l Ins. Co.*, 2016 WL 8243177, at *7 (M.D. La. Aug. 1, 2016) (cleaned up).
[39] *Id.* (cleaned up).
[40] *Id.*
[41] *Id.*

"If, however, the contract is ambiguous, its opacity can only be resolved by a duly appointed factfinder, not a court on a motion for summary judgment."[42] "[O]nly when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment."[43]

### A. The Elite Plaintiffs

While the instant *Motion* was pending, the Fifth Circuit decided *Rolls.* In *Rolls*, a different Elite employee sued PCA alleging that he sustained injuries from the same explosion that gave rise to the instant case. The Fifth Circuit held that PCA was the statutory employer of the *Rolls* plaintiff because the purchase order under which that plaintiff was working incorporated the PCA Terms & Conditions. The court did not address or mention any evidence that the purchase order contained a provision that incorporated the ASCA. In contrast, every purchase order in the record before the Court contains a provision that the ASCA governs work performed under each purchase order.[44] Therefore, the Court concludes that *Rolls* is distinguishable because, on the record before the Court, each purchase order at issue here contains a reference to the ASCA.

That said, Defendants' argument as to the Elite Plaintiffs is well-taken. To reiterate, the PCA Terms & Conditions provides: "[p]urchases by [PCA and its subsidiaries] are governed by these Terms & Conditions, unless the parties have entered into a mutually executed written master agreement stating applicable Terms & Conditions."[45] Defendants' interpretation of "parties" as referring to the parties to the "purchase" is reasonable. Under that interpretation, the parties to the purchase order are Elite and PCA,

---

[42] *Id*.
[43] *Amoco Prod. Co. v. Texas Meridian Res. Expl. Inc.*, 180 F.3d 664, 669 (5th Cir. 1999).
[44] See Rec. Doc. No. 59-8, p. 19–43.
[45] Rec. Doc. No. 59-6, p. 1.

8

who did not have a master service agreement in place. Therefore, the PCA Terms & Conditions would apply as they are incorporated into the purchase orders and no master service agreement between the "parties" negates their applicability. As such, all Defendants would be considered statutory employers of the Elite Plaintiffs.

However, the inquiry does not end there because the Elite purchase orders themselves refer to the ASCA. Every Elite purchase order states: "[t]his purchase order is governed by a master service agreement for construction dated 8/18/14 currently in effect between the purchase order vendor and Packaging Corporation of America. The master service agreement is part of this purchase order."[46] In its prior *Ruling*, the Court found that the master service agreement that is referred to in the purchase orders is the ACSA between Elite and BPN.[47] Therefore, the purchase orders could be read to incorporate the ACSA and reflect Elite and PCA's intention to do so. The Court finds that this would be a reasonable interpretation of the contract.[48]

If the ASCA applies, then the following provision within it would apply: "[t]he terms of this [a]greement shall apply to all [w]ork performed pursuant to [p]urchase [o]rders issued hereunder and any conflicting or additional Terms & Conditions on any issued [p]urchase [o]rder shall have no force or effect."[49] The PCA Terms & Conditions affords PCA, BPN, and Boise statutory employer status, while the ASCA only affords that status

---

[46] *See e.g.*, Rec. Doc. No. 59-8, p. 42.
[47] Rec. Doc. No. 72, p. 8.
[48] It is irrelevant that PCA was not a party to the ASCA. The purchase orders explicitly state that they are bound by the ACSA, and, as the *Rolls* court stated, "where a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together." *Rolls on behalf of A. R. v. Packaging Corp. of Am. Inc.*, No. 21-30435, 2022 WL 1560368, at *6 (5th Cir. May 18, 2022).
[49] Rec. Doc. No. 59-10, p. 1.

9

to BPN. The PCA Terms & Conditions provision would thus be "conflicting or additional" and would not apply. Therefore, only BPN would be a statutory employer.

In sum, there are two reasonable interpretations of the contract documents at issue. Therefore, the contract documents are ambiguous. And because the contract documents are ambiguous, summary judgment is inappropriate, and the factfinder must determine the issue.

### B. Top Deck Plaintiffs

Defendants' argument as to this set of Plaintiffs is flawed. Although the MSAC clearly states that the purchase order is part of the contract, it does not include the PCA Terms & Conditions as a part of those contract documents. To be sure, the purchase orders purport to incorporate the Terms & Conditions, but the Terms & Conditions itself expressly negates its applicability, and there is no ambiguity: "[p]urchases by [PCA and its subsidiaries] are governed by these Terms & Conditions, unless the parties have entered into a mutually executed written master agreement stating applicable Terms & Conditions."[50] Therefore, summary judgment is also inappropriate as to the Top Deck Plaintiffs.

### C. Butterfield

Defendants' argument as to Butterfield was derivative of their arguments as to the Top Deck and Elite Plaintiffs. Therefore, this argument also fails.

### D. Defendants' Request to Certify the Decision for Interlocutory Appeal

28 U.S.C. § 1292(b) authorizes the Court to make such a certification if it is "of the opinion that [its] order involves a controlling question of law as to which there is a

---

[50] Rec. Doc. No. 59-6, p. 1.

substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Defendants' request is denied as the Fifth Circuit has ruled in *Rolls*.

## IV.    CONCLUSION

Defendants' *Motion to Reconsider*[51] is granted in part and denied in part. Except as granted in the Court's prior *Ruling*, summary judgment remains inappropriate. But the Court's prior *Ruling*[52] is amended insofar as the Court recognizes that the contract documents relevant to the Elite Plaintiffs are ambiguous, and the interpretation of them is a question of fact for the factfinder.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on June 24, 2022

                                                                              *Shelly D. Dick*
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[51] Rec. Doc. No. 77.
[52] Rec. Doc. No. 72.