UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL JOHNSON, ET AL.** | **CIVIL ACTION** |
| v. | NO. 3:18-CV-00613-SDD-EWD |
| | **CHIEF JUDGE SHELLY D. DICK** |
| **PACKAGING CORPORATION OF AMERICA, ET AL.** | **MAGISTRATE ERIN WILDER-DOOMES** |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE STALE DAMAGES EVIDENCE

Defendants Packaging Corporation of America, Boise Packaging & Newsprint, LLC, Boise Inc., and Rick Butterfield ("Defendants"), respectfully submit the following memorandum in support of their Motion *in Limine* to Exclude Stale Damages Evidence.

### BACKGROUND

Plaintiffs in the captioned case assert damages arising from the February 8, 2017 explosion of a foul condensate tank (hereinafter, the "FCT") at PCA's paper mill in DeRidder, Louisiana (hereinafter, the "DeRidder Incident"). In part, Plaintiffs claim that injuries they suffered as a result of the DeRidder Incident caused them loss of past and future earning capacity.

In support of their claim for lost earning capacity, Plaintiffs submitted reports by Kenneth G. McCoin. McCoin's reports are listed on Plaintiff's proposed trial exhibit list as Exhibits 129-137.[1] Each report is dated February 12, 2018, and each explains that the report

> spans two time periods: the "past" and the future. The past measures earning capacity from February 8, 2017, the assumed date [a plaintiff's] economic loss began ("the loss date," the injury date was 2/8/17), until December 3, 2018, the assumed date of trial. The future measures earning capacity from the time of trial through his remaining worklife.[2]

---
[1] *See* Plaintiff's Exhibit List, Doc. 192-1.
[2] Exs. 1 through 9, McCoin Reports.

1

Trial in this matter is set not for December 3, 2018, but for February 26, 2024. That date has been set since July 29, 2022.[3] In connection with the scheduling order setting the February 26, 2024 trial date (as amended), Plaintiffs were given until July 21, 2023 to provide expert reports for trial.[4] But despite having nearly a year between when trial was set and when expert reports were due, Plaintiffs never supplemented the 2018 reports from Dr. McCoin. These reports, which are based on outdated assumptions about Plaintiffs' inability to work, have almost no relevance to any lost earnings by Plaintiffs, and any relevance they do have is outweighed by the likelihood that their admission would cause jury confusion and waste time. Because only relevant evidence is permitted at trial, and even relevant evidence may be excluded where it is so stale as to be minimally probative or its admission would cause confusion, Plaintiffs should be precluded from introducing at trial the reports and the testimony of Dr. McCoin regarding the contents of the reports.

## LAW & ARGUMENT

### I. Admissible evidence

Federal Rule of Evidence 402 provides only for the admission of relevant evidence, defined by Federal Rule of Evidence 401 as that which "has any tendency to make a fact more or less probable than it would be without the evidence" when that fact "is of consequence in determining the action." *See* Fed. R. Evid. 401(a)-(b); Fed. R. Evid. 402. But even relevant evidence may be excluded if its admission would result in "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence" Fed. R. Evid. 403.

---

[3] Doc. 90.
[4] Doc. 135.

## II. McCoin's outdated earnings projections have little relevance to Plaintiffs' actual lost earnings, and any such relevance is outweighed by their potential for confusion.

Each of Dr. McCoin's reports contains two tables. Table 1 in each report is a summary table containing a figure for past lost earnings and future lost earnings. Table 2 provides the data upon which Dr. McCoin bases these figures. In each Table 2, McCoin calculates a Plaintiff's expected "past earnings" for 2017 and most of 2018, and that Plaintiff's "future earnings" for December 3, 2018 through the remainder of the Plaintiff's expected work life by totaling the Plaintiff's reported wages plus benefits less work related expenses. The earnings calculations are discounted by applying an "expected future real rate of interest" but are not otherwise adjusted. The past earnings numbers therefore assume each Plaintiff did not work between the DeRidder Incident and the assumed December 3, 2018 trial date, and the future earnings numbers represent the amount each Plaintiff would lose during their work life if they never returned to work after the DeRidder Incident.

Nearly all of the evidence in this case was exchanged *after* the February 12, 2018 date on which Dr. McCoin's reports were issued. For example, multiple Plaintiffs have since provided sworn testimony about their ability to work that renders Dr. McCoin's calculations of past and future lost earnings meaningless. Specifically:

- Jerry Bailey testified that he was only "off for a little while" before returning to work as a welder after the DeRidder Incident.[5] Mr. Bailey "quit" that welding job after a couple of weeks and remained unemployed for two years.[6] He then returned to work as a welder

---

[5] Ex. 10, Jerry Bailey Depo. at 54:55-1.
[6] *Id.* at 55:5-8.

3

before starting a home construction company in 2022 from which he receives weekly income.[7]

- Demon Benjamin testified that he "started back working in 2018," such that it was only "about a year" after the DeRidder Incident that he did not go back to work.[8]

- Michael Darbonne returned to work as a pipefitter in 2023; before he took that job, he worked in floor installation for two or three years.[9]

- Michael Johnson returned to work briefly in 2019, and since 2020 has worked in power line jobs.[10]

- Michael McCullough took a six-week job shortly after the DeRidder Incident that "paid the same" as he was earning before the incident.[11]

- Eric Woodard returned to work approximately two years after the DeRidder Incident.[12]

Courts can limit the admission of evidence that is "too remote to have sufficient probative value to justify burdening the record with it." *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 710 (1962). Dr. McCoin's outdated lost-earnings calculations, rendered before most Plaintiffs in this case did in fact return to work, do not have sufficient probative value to justify their admission at trial. And any limited relevance that Dr. McCoin's general earnings-potential calculations might have is outweighed by the likelihood that his now-incorrect assumptions that Plaintiffs had not returned and could not return to work would cause jury confusion and prejudice to Defendants. *See Matter of Crosby Marine Transp.*, No. 17-14023,

---

[7] *Id.* at 56:2-21; 49:2-54:12.
[8] Ex. 11, Demon Benjamin Depo. at 55:4-14. Notably, Mr. Benjamin originally testified he could not recall missing *any* work and only agreed he had missed work for a year after being led by his own counsel.
[9] Ex. 12, Michael Darbonne Depo. at 40:14-41:22.
[10] Ex. 13, Michael Johnson Depo. at 96:1-100:17.
[11] Ex. 14, Michael McCullough Depo. at 67:13-24; 74:17-75:8
[12] Ex. 15, Eric Woodard Depo. at 65:10-66:22; 85:16-19.

2021 WL 1931168, at *5 (E.D. La. May 13, 2021) (explaining that Louisiana law permits an award of past lost wages "only until the time [a plaintiff] could have resumed earning wages" and requires proof of the "duration of time missed from work due to the accident," and that for future lost wages, "a plaintiff must present medical evidence indicating with reasonable certainty that there exists a residual disability causally related to the incident") (citations omitted).[13]

## CONCLUSION

As set forth above, Dr. McCoin's stale earnings calculations are at best minimally relevant to Plaintiffs' actual lost earnings, and any probative value those calculations may have is far outweighed by the risk that their admission would confuse the jury and waste valuable trial time. Dr. McCoin's reports and any testimony by regarding their contents should be excluded from the trial of this matter.

[SIGNATURE BLOCKS ON THE NEXT PAGE]

---

[13] Defendants expect that Plaintiffs will argue that experts may rely upon assumptions and the outdated nature of Dr. McCoin's assumptions is an issue that can be dealt with on cross-examination rather than excluded pre-trial. But expert opinions should be rejected when "based upon assumed facts not supported by the record." *Thomas v. Petrolane Gas Serv. Ltd. P'ship*, 588 So. 2d 711, 719 (La. App. 2 Cir. 1991) (approving of a trial court's rejection of an economist's lost earnings projections that were based on assumptions that were "clearly dubious"); *see also Paz v. Brush Eng'd Materials, Inc.*, 555 F.3d 383, 388-89 (5th Cir. 2009) (affirming exclusion of an expert's testimony and report that was based on "a false assumption"). Allowing Dr. McCoin to rely upon these demonstrably false assumptions would offend the purposes for which expert witnesses are permitted to testify. *See Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (explaining that "the existence of <u>sufficient facts</u> and a reliable methodology is in all instances mandatory," because "without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible") (emphasis added) (internal quotation omitted).

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

*/s/   Rebekka C. Veith*
Kerry J. Miller, T.A. (#24562)
Rebekka C. Veith (#36062)
Paul C. Thibodeaux (#29446)
Monica L. Bergeron (#39124)
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone: (504) 556-5549
Facsimile:  (504) 310-0275
kmiller@fishmanhaygood.com
rveith@fishmanhaygood.com
pthibodeaux@fishmanhaygood.com
mbergeron@fishmanhaygood.com

**ALSTON & BIRD LLP**

Eric Kuwana (admitted *pro hac vice*)
90 Park Avenue, 15th Floor
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
eric.kuwana@alston.com

Sarah O'Donohue (admitted *pro hac vice*)
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile:  (404) 881-7777
sarah.odonohue@alston.com
*Counsel for Defendants,*
*Packaging Corporation of America,*
*Boise Packaging & Newsprint, LLC,*
*Boise Inc., and Rick Butterfield*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 5, 2024, I provided that the foregoing Motion *in Limine* to counsel of record for Plaintiffs via e-mail.

*/s/  Rebekka C. Veith*
Rebekka C. Veith