UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MICHAEL JOHNSON, ET AL.** | * | **CIVIL ACTION NO. 3:18-cv-00613** |
| | * | |
| **VERSUS** | * | **CHIEF JUDGE SHELLY D. DICK** |
| | * | |
| **PACKAGING CORPORATION OF AMERICA, ET AL.** | * | **MAGISTRATE JUDGE ERIN WILDER-DOOMES** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS FOR EAVESDROPPING ON PROTECTED ATTORNEY-CLIENT COMMUNICATIONS

The plaintiffs, Michael Johnson, Charles Cunningham, Jerry Bailey, Eric Woodward, Michael Darbonne, Michael McCullough, Christopher Harrington, Demon Benjamin, and Pamela Green, respectfully move the Court to enter sanctions against Packaging Corporation of America ("PCA"), Boise Inc. ("Boise"), and Boise Packaging & Newsprint, L.L.C. ("BPN") for eavesdropping on protected attorney-client communications.

**I.    The legal framework of this motion.**

The issue in this motion is the Deputy General Counsel for PCA, Tony Steenkolk's improper eavesdropping on the protected attorney-client communications between plaintiffs' counsel and the plaintiffs. Legally, such occurrences are rare, but the law is sufficiently established that the Court has the power to remedy it. As one federal court has noted: "it is a cardinal rule of litigation that one side may not eavesdrop on the other's privileged attorney-client communications."[1]

---

[1]    *Turkmen v. Ashcroft*, 2006 WL 4483151 at *1 (E.D.N.Y. 2006).

State courts have commented on the issue in several respects. As they explain:

> It is axiomatic that a lawyer in representing a party to a lawsuit may not, in the absence of a court order, become privy to any privileged attorney-client communications involving the opposing party to the lawsuit. Indeed, it would be a shocking breach of the attorney-client privilege for a lawyer to surreptitiously eavesdrop on the confidential communications between the opposing party and his counsel; such communications are clearly privileged under our law and may not be secretly intercepted by counsel for the adverse party.[2]

In the criminal context, where the issue has arisen on a few occasions, such improprieties are recognized as "shock[ing]" and they even lead to the *dismissal* of the State's case against a defendant. As one State court has explained:

> Where the prosecutor uses the courtroom as a place to eavesdrop upon privileged attorney-client communications which results in the acquisition of confidential information, the conscience of the court is shocked and dismissal is the appropriate remedy.[3]

Indeed, prejudice from such conduct is *presumed*: "When the State eavesdrops on a defendant's attorney-client privileged communication, we presume prejudice."[4] Ultimately, the scope of the remedy that the Court elects to invoke is within its discretion.[5]

---

[2] *Adelman v. Adelman*, 561 So. 2d 671, 672 (Fla. App. 3d Dist. 1990); *see also*, *Frye v. Ironstone Bank*, 69 So. 3d 1046, 105-51 (Fla. App. 2d Dist. 2011) (citing *Adelman* favorably).

[3] *Morrow v. Superior Court*, 30 Cal. App. 4th 1252, 1255 (Cal. App. 2nd Dist. 1994).

[4] *State v. Booth*, 2019 WL 5704636 at *5 (Wa. App. Div. 2 2019);

[5] *People v. Shrier*, 190 Cal. App. 4th. 400, 419 (Cal. App. 2nd Dist. 2019) ("The judiciary should not be a party to any exploitation of illegally obtained evidence at trial. If respondents are held to answer at the preliminary hearing, the superior court shall exercise broad discretion in fashioning a remedial order. At a minimum it shall bar the use of any information gleaned from the eavesdropping and any derivative evidence which may have flowed therefrom. The People shall have the burden to show that any People's evidence sought to be introduced has an independent origin from the eavesdropping. The burden of proof is beyond a reasonable doubt. In addition, the superior court may make any other order or impose any other sanction which it deems appropriate.").

The Court should follow these cases here. Otherwise, the federal judiciary's "cardinal rule of litigation"[6] against eavesdropping would become meaningless and unenforceable. In this civil case, the Court's ability to address the situation falls within the Court's inherent power because that power includes "power to levy sanctions in response to abusive litigation practices."[7]

Relevant here, multiple federal courts have held that the Court's inherent power permits the Court to strike a defendant's answer and affirmative defenses and enter a default in situations similar to this one. Ultimately, eavesdropping on an adversary's protected communications has serious consequences. Three rulings are worth noting.

First, in *Eagle Hospital Physicians, LLC v. SRG Consulting, Inc.*,[8] a defendant (Gerst) was found to have been eavesdropping on, and intercepting, email communications between the plaintiff and its attorneys.[9] This conduct, the district court found, disrupted the litigation and was in bad faith.[10] The district court sanctioned Gerst (and the defendant parties he was associated with) under its inherent power, struck their answer and affirmative defenses, and entered a default against them.[11] The Eleventh Circuit *affirmed* that sanction.[12]

Second, in *Leor Exploration & Production, LLC v. Aguilar*,[13] a defendant was found to have hacked into the plaintiffs' emails and gained access to privileged attorney-client

---

[6]  *Turkmen v. Ashcroft*, 2006 WL 4483151 at *1 (E.D.N.Y. 2006).

[7]  *Brothers Holding Company, LLC v. Alliance International Aviation, LLC*, 2022 WL 17419335 at *1 (D. New Mex. 2022) (quotations omitted).

[8]  561 F.3d 1298 (11th Cir. 2009).

[9]  *Id*. at 1302-03.

[10]  *Id*.

[11]  *Id*.

[12]  *Id*. at 1306-07.

[13]  2010 WL 3782195 (S.D. Fla. 2010).

3

communications.[14] The Magistrate Judge—and later the district court in adopting its report—followed *Eagle Hospital*, invoked inherent power, and entered a sanction striking the defendants' pleadings.[15]

And third, in *Lighthouse List Company, LLC v. Cross Hatch Ventures Corp.*,[16] a defendant gained access to the plaintiff company's privileged emails.[17] Relying upon *Eagle Hospital* and *Leor*, the Magistrate Judge recommended that the defendant's pleadings be stricken.[18] The district court adopted most of that ruling, but struck only the defendants' opposition to the plaintiff's pending partial summary judgment motion—resulting in the motion being granted.[19] As the district court explained in so ruling:

> In this litigation, [the plaintiff and its counsel] can never be sure that any strategic decisions that they may have chosen to make will have been anticipated by [the defendant] or opposing counsel because of the unfair advantage created when a level playing field was destroyed. Here, [the defendant's] infiltration of an opposing party's litigation strategy and work product is detrimental to the adversarial process under which our system of justice operates. An egregious violation warrants a severe penalty.[20]

These three cases confirm that the Court has the power to exercise its inherent power to strike pleadings and/or default a party who eavesdrops on his adversary's protected attorney-client communications.

---

[14]    *Id*. at *1-2.

[15]    *Id*. at *2; *see also*, *id*. at *10-12.

[16]    2014 WL 11531800 (S.D. Fla. 2014).

[17]    *E.g., id*. at *8.

[18]    *Id*. at *8-10.

[19]    2014 WL 11531638 at *4 (S.D. Fla. 2014).

[20]    *Id*. at *3.

4

## II. The facts.

On April 10, 2024, the Deputy General Counsel for PCA, Tony Steenkolk, sat for hours typing on a laptop directly outside the doors—and within a few feet—of the plaintiffs' rented conference rooms in a private hallway at the Hilton Baton Rouge Hotel (where the plaintiffs are preparing with their lawyers for trial). Mr. Steenkolk was able to keep his identity veiled by wearing a hat that covered part of his face. The following pictures illustrate the intimate and egregious nature of the invasion.

*Mr. Steenkolk sat in the chair and secretly stalked the plaintiffs and plaintiffs' counsel in the room circled below:*



5

*Mr. Steenkolk's vantage point of the room from Mr. Steenkolk's chair:*



The plaintiffs also have another rented conference room on the right side of the hallway—*i.e.* the same side as Mr. Steenkolk's chair. The plaintiffs' second rented conference room on the right side of the hallway is also just an earshot and a few steps from Mr. Steenkolk's chair. In other words, Mr. Steenkolk sat within a few steps of both of the plaintiffs' rented conference rooms for hours eavesdropping on the plaintiffs' trial preparations, attorney-client privileged

6

communications, and attorney work-product.[21]

In addition, paralegals were in and out of the rooms with clients for hours. There were conversations taking place between staff and clients. All of this was in an area that plaintiffs counsel had rented, that was not near or around any common areas of the hotel. Despite this, Mr. Steenkolk intruded the area and was found snooping around the rooms. So much so that the paralegal for plaintiffs' counsel became uncomfortable and contacted the senior lawyers about the unusual, invasive, and bizarre activities from a man that they did not recognize. Simply put, the circumstances can only be described as a deliberate invasion of privilege because of the private area in which it occurred. The fact that it was the Deputy General Counsel for PCA in a case that is currently in trial highlights the egregious nature of his actions.

There is no reason this witness would have done this other than to eavesdrop on the communications happening within the rented conference rooms. At this point, the plaintiffs are extremely prejudiced by the amount of privileged communications and work product that the Deputy General Counsel obtained access to while spying on the plaintiffs. Many of the plaintiffs are beyond disturbed, upset, scared, anxious and feel violated by the companies' behavior. This conduct is shocking, and prejudice from it is usually presumed. It also warrants serious sanctions.

The plaintiffs request an evidentiary hearing with the Court so that the facts of this matter may be explored, and appropriate sanctions may be entered. The egregious conduct exhibited by the Deputy General Counsel for PCA violates a cardinal rule of litigation in every single jurisdiction in the United States. Like other courts have explained when confronted with this conduct, an egregious violation warrants a severe penalty. As set forth above in Section I, the plaintiffs believe a proper sanction is the striking of the defendants' answer and their affirmative

---

[21] The plaintiffs can also provide the Court with a video that shows the layout in further detail.

defenses and/or the entry of a default. This falls squarely within the Court's inherent power, and the Court is well versed to enter this sanction.

### III.

### Conclusion.

The Court should hear this matter outside the presence of the jury, accept live testimony on it, and enter an appropriate sanction under the Court's inherent power striking the defendant's answer and affirmative defenses and/or entering a default.

Respectfully Submitted,

ARNOLD & ITKIN LLP

/s/ John G. Grinnan
J. Kyle Findley (#34922)
kfindley@arnolditkin.com
Kala Sellers (#36182)
ksellers@arnolditkin.com
John G. Grinnan *pro hac vice*
jgrinnan@arnolditkin.com
6009 Memorial Drive
Houston, TX 77007
Tel: (713) 222-3800
Fax: (713) 222-3850
**e-service@arnolditkin.com**

A. M. "Tony" Clayton (#21191)
Michael P. Fruge (#26287)
Richard J. Ward, III (#32267)
Clayton, Fruge & Ward
3741 La. Highway 1 South
Port Allen, LA 70767
Tel: (225) 344-7000
Fax: (225) 383-7631

**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record by the CM/ECF system or other means on April 11, 2024.

                                    /s/ John Grinnan
                                    John Grinnan