**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MICHAEL JOHNSON, ET AL.** | **CIVIL ACTION** |
| v. | **NO. 3:18-CV-00613-SDD-EWD** |
| **PACKAGING CORPORATION** | **CHIEF JUDGE SHELLY D. DICK** |
| **OF AMERICA, ET AL.** | **MAGISTRATE ERIN WILDER-DOOMES** |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR SANCTIONS**

In a desperate attempt to short circuit the trial that is well underway, and continuing their loud and angry barrage against Defendants, Plaintiffs ask the Court "to strike all of the defendants' answer and their affirmative defenses and/or the entry of a default"[1] because a Packaging Corporation of America ("PCA") corporate counsel and sequestered witness sat in a public area near the lobby of the Hilton hotel—where, unbeknownst to the witness, Plaintiffs' counsel were using conference rooms—while he waited for his room to be cleaned. Plaintiffs speculate—but point to no evidence—that the witness eavesdropped on their confidential and privileged communications. That speculation is not, and cannot be, sufficient to support the extreme sanctions that Plaintiffs seek. Indeed, even if Plaintiffs could show that the witness overheard any confidential or privileged communication from the place in which he was waiting (they cannot), Plaintiffs certainly cannot show any intent to eavesdrop, and the extreme sanctions they seek could not be justified. For these reasons, and those explained below, Defendants PCA, Boise Packaging & Newsprint, LLC, Boise Inc., and Rick Butterfield ("Defendants") submit the following memorandum in opposition to Plaintiffs' Motion for Sanctions (Doc. 255) and in advance of a hearing on Plaintiffs' motion for sanctions.

---

[1] Rec. Doc. No. 255 at 1.

1

## I. Factual Background

Defendants expect the evidence presented at the hearing to show as follows:

Tony Steenkolk is Deputy General Counsel for PCA. Defense counsel planned to call Mr. Steenkolk in the defense case-in-chief later in April to provide live testimony in support of the statutory employer defense. Accordingly, Mr. Steenkolk made reservations at the Watermark Hotel for April 21–25, 2024, so that he would be available to testify during the defense's case-in-chief.[2]

On April 6, 2024 (the Saturday before the beginning of trial), Plaintiffs' counsel informed defense counsel for the first time that they wanted to call Mr. Steenkolk on the first "Monday/Tuesday" of trial. In that email, Plaintiffs provided a list of six witnesses, including Mr. Steenkolk, that they anticipated calling on Monday, April 8 or Tuesday, April 9. Defense counsel responded as follows that evening:

> We contacted Mr. Steenkolk after receiving your email and he has rearranged his plans for the week to accommodate plaintiffs' request. He can be in Baton Rouge Monday night and can testify anytime on Tuesday. We plan on conducting our direct examination of Mr. Steenkolk after we complete our cross examination of Mr. Steen[k]olk in plaintiffs' case as opposed to calling him back in defendants' case.

Because he had to rearrange his travel plans over the weekend and at the last minute to be available for Plaintiffs' case-in-chief, and because the Watermark was sold out and no longer had reservations available, Mr. Steenkolk booked a room at the Hilton hotel.

Contrary to their representations, Plaintiffs did not call Mr. Steenkolk to testify on April 8th nor on April 9th. Accordingly, Mr. Steenkolk spent the majority of his day on Tuesday, April 9 in his hotel room. Again, he was and is a sequestered witness.

---

[2] Mr. Steenkolk does not live or work in Louisiana, and he traveled from Illinois to testify at the trial.

On April 10, Mr. Steenkolk requested that the Hilton hotel housekeeping clean his room. To be out of his room for a while and to facilitate its cleaning, Mr. Steenkolk looked for a place in the lobby to work. Because the lobby was filled with people attending a realtor convention and was very noisy, he found another public area off the lobby where he could sit and work. While working in that public area, Mr. Steenkolk returned to his room several times and found that it had not yet been cleaned.

Mr. Steenkolk eventually moved to the main area of the lobby when his room was still not ready, and Plaintiffs' counsel confronted him there. Because he was sequestered, Mr. Steenkolk had not yet seen Plaintiffs or their counsel (other than in remote depositions over Zoom), and he did not know that they were meeting in a room off the public area in which he was sitting. In fact, Mr. Steenkolk did not know that Plaintiffs or their counsel were staying at the same hotel. While working in that public area, Mr. Steenkolk did not listen to any conversations in Plaintiffs' "war room." Put simply, it is completely false that Mr. Steenkolk was eavesdropping, spying, or listening-in to any such conversations.

Mr. Steenkolk spent approximately four hours waiting for his room to be cleaned. Mr. Steenkolk explained this to Plaintiffs' counsel in person, gave Plaintiffs' counsel his room number, and told him that he had not been "snooping," yet Plaintiffs chose to file the instant Motion anyway.

## II. Argument

Plaintiffs' requested sanction—the striking of "all of the defendants' answer and their affirmative defenses and/or the entry of a default" pursuant to the Court's "inherent power"[3]—is extreme and unwarranted. First, Plaintiffs have not shown, beyond contrived accusations and rank

---

[3] Rec. Doc. No. 255 at 1.

speculation, that Mr. Steenkolk eavesdropped, spied on, or overheard any confidential or privileged communications. That alone requires denial of their Motion. Second, Plaintiffs' requested sanctions are legally unsupportable in any event.

A.  **Mr. Steenkolk did not "eavesdrop" on any privileged communications, and Plaintiffs' speculation is an insufficient factual basis to support sanctions.**

Sanctions pursuant to the Court's "inherent power must be invoked with the utmost caution."[4] Indeed, "the Supreme Court has indicated that a sanction under the [district court's] inherent power is appropriate only where the party 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"[5] And, as the Fifth Circuit has held, the "extreme sanction of striking an answer . . . can be used only where there is *bad faith* or *willful abuse* of the judicial process."[6] Further, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."[7]

Plaintiffs cannot *prove* any *facts* that would warrant sanctions. They speculate that Mr. Steenkolk—who was looking for a place to work while he waited for his room to be cleaned—was "stalking" Plaintiffs and their counsel, was "snooping" around Plaintiffs' rented conference rooms, and had no reason to be in that public area "other than to eavesdrop."[8] Mr. Steenkolk's mere presence in a public area off the lobby of the hotel in which he was staying does not demonstrate that he overheard any confidential or privileged communications, much less that he intended to

---

[4] *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1059 (7th Cir. 1998).
[5] *Id.* at 1058 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)).
[6] *Ocean-Oil Expert Witness, Inc. v. O'Dwyer*, 451 F. App'x 324, 332 (5th Cir. 2011) (emphasis added).
[7] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Notably, this remedy is "available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* (citation omitted).
[8] Rec. Doc. 255 at 6–7.

4

eavesdrop. Courts have rejected requests for sanctions where claims of eavesdropping are purely speculative.[9]

The evidence at the hearing will show that Mr. Steenkolk did not hear or observe any confidential or privileged communications among Plaintiffs and their counsel. His testimony at trial—which will pertain to the factual bases for Defendants' statutory employer defense—does not relate to any individual plaintiff or their injuries, the cause of the February 2017 explosion at the DeRidder Mill, or any expert's testimony. In short, Mr. Steenkolk did not eavesdrop, no confidences were disclosed (even inadvertently), and Plaintiffs have suffered no prejudice from Mr. Steenkolk sitting in a public area of his hotel.

**B.    The extreme sanctions Plaintiffs seek are not legally supportable.**

Setting aside the fact that Plaintiffs' sole factual basis for their Motion is speculation, Plaintiffs' Motion is also legally erroneous for three reasons.

*First*, while cases addressing eavesdropping in the civil context are sparse, even in instances where privileged conversations are overheard, sanctions are only warranted when the conversations are acted upon by the eavesdropper. For example, *Reid v. Womack*, a paralegal incidentally overheard a conversation between opposing counsel and his client.[10] The paralegal then prepared an affidavit detailing the overheard conversation, which the plaintiffs sought to use in the litigation.[11] The court barred the plaintiffs from using the affidavit.[12] But even in a case like *Reid*, where the paralegal intentionally memorialized the overhead, privileged conversation in an

---

[9] *See Black v. Brown*, 2019 WL 3325840, at *2 (S.D. Ill. Mar. 25, 2019) (denying motion to strike pleadings where the "Plaintiff's allegations of eavesdropping" were "bare assertions" and "lack[ed] any evidentiary or documentary support," so "the harsh sanction of striking all of Defendants' pleadings [was] clearly not warranted").
[10] 2014 WL 4094465, at *3-4 (D. Utah Aug. 18, 2014).
[11] *Id.*
[12] *Id.* at *15.

affidavit, the proper remedy was only to prevent the party from relying on the privileged material. Here, Mr. Steenkolk's testimony regarding the corporate relationship between and among the Defendants is not related to, and does not rely upon, any privileged communications he allegedly overheard on April 10. Further, even if Mr. Steenkolk did unintentionally hear privileged communications (which he did not), the proper remedy is to preclude Mr. Steenkolk from testifying about those communications—not wholesale striking Defendants' affirmative defenses or pleading. Again, sanctions imposed under the Court's inherent power must be restrained and directed towards bad faith, or willfully abusive, conduct. And here, there is zero evidence of any such conduct.

Courts will also reject presumption of prejudice when privileged information that is overhead is utilized, and instead will consider intentionality and proportionality to craft a remedy for eavesdropping.[13] In *Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, 2023 WL 1816753, (S.D. Ill. Feb. 8, 2023), defense counsel retained an expert to perform an independent medical evaluation of the plaintiffs, but on the date of that medical evaluation, the expert overheard a conversation between the plaintiffs and their attorney.[14] The expert incorporated the substance of that communication into his expert report.[15] Instead of entering default judgment, striking the pleadings, or striking the entire expert report, the court instead ordered the expert to "not consider or rely upon the privileged attorney-client communication that he overheard in the preparation of his expert report in this case or in the testimony he provides at trial" and to "modify his report . . .

---

[13] *See Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, 2023 WL 1816753, at *3 (S.D. Ill. Feb. 8, 2023) ("[I]n determining the appropriate remedy for a violation of attorney-client privilege, courts should consider the intent of the eavesdropper and whether the eavesdropper was acting at the behest of an attorney involved in the case.").
[14] *Id.* at *1.
[15] *Id.*

to strike any reference to the attorney-client communication."[16] The Court reasoned that because the expert did not intentionally overhear the conversation, was not acting at the direction of defense counsel, and did not materially rely upon the contents of the privileged communications for his expert opinion, the expert did not need to be disqualified.[17] Again, here, there is no evidence that Mr. Steenkolk overhear anything, nor is there any evidence that Defendants have utilized any information that Mr. Steenkolk allegedly overheard. But if Mr. Steenkolk *had* overheard something, the appropriate remedy is an instruction that anything Mr. Steenkolk overheard cannot be utilized by Mr. Steenkolk in his testimony or by Defendants in their case—not striking Defendants' answer or affirmative defenses.

***Second***, in the civil context, prejudice is not presumed. Citing *State v. Booth*,[18] Plaintiffs mislead the Court and assert that prejudice must be *presumed* by this Court. But this assertion is unfounded for several reasons. First, *Booth* was a case from Washington state court, and Plaintiffs cannot point to a single line of cases from any other court that indicates likewise. Additionally, *Booth* was a criminal case in which defendants enjoy heightened due-process protections, and prejudice was only presumed there because "[i]ntrusion into private attorney-client communications violates a defendant's right to . . . due process."[19] *Booth*'s line of reasoning was derived from the Washington Supreme Court's *State v. Peña Fuentes*,[20] which noted that the U.S. Supreme Court "has expressly rejected a per se prejudicial rule for such eavesdropping, holding that when an eavesdropped did not communicate the topic of the overheard conversations and

---

[16] *Id.* at *5.
[17] *Id.* at *3.
[18] 2019 WL 5704636, at *5 (Wash. App. Div. 2 Nov. 5, 2019).
[19] *Id.*
[20] 179 Wash. 2d 808 (Wa. 2014).

7

thereby create 'at least a realistic possibility of injury to [the defendant] or benefit to the State, there can be no Sixth Amendment violation.'"[21]

The line of cases cited by Plaintiffs for this proposition reveals several points. First, to the extent that Plaintiffs urge the Court to conclusively presume prejudice, such a presumption finds no support in the decisions of the Supreme Court and Fifth Circuit (or, for that matter, in any federal case law). Next, the presumption-of-prejudice approach adopted by the Washington state court comes from a line of criminal cases and is entirely rooted in the Sixth Amendment. As the Fifth Circuit has expressly noted, the Seventh Amendment, which governs civil trials like this one, is "textually different from the Sixth Amendment," and the interpretations of one do not translate to the other.[22] Plaintiffs have not and cannot point to a single case indicating a presumption of prejudice similarly arises in civil cases.[23]

Further, Plaintiffs' cited criminal authority also undercuts their argument. Plaintiffs cite *Morrow v. Superior Court* for the proposition that dismissal of a State's criminal case is the proper remedy where the defendant's privileged attorney-client communications are infringed.[24] There, the prosecutor instructed an investigator to eavesdrop on a conversation between a defendant and his attorney in the courtroom's holding area.[25] In a later case, the Supreme Court of California held that a bailiff had not "infringed upon [a] defendant's attorney-client privilege" where, unlike in *Morrow*, the bailiff "did not intentionally put himself in a position to 'eavesdrop' upon

---

[21] *Id.* at 819 (quoting *Weatherford v. Bursey*, 429 U.S. 545, 557–58 (1977)).
[22] *Cooley v. Strickland Transp. Corp.*, 459 F.2d 779, 791 (5th Cir. 1972).
[23] Even under the criminal standard cited by Plaintiffs, the United States Supreme Court's decision in *Weatherford* is revealing—there is no prejudice unless an eavesdropper communicated the topic of the overheard conversations. *See Weatherford*, 429 U.S. at 557–58. Here, Mr. Steenkolk had no engagement with PCA or its trial counsel on trial strategy of any kind. Accordingly, there is no prejudice even under Plaintiffs' standard.
[24] 30 Cal. App. 4th 1252, 1255 (Cal. App. 2nd Dist. 1994).
[25] *Id.*

communications protected by the attorney-client privilege" and "nothing in the record suggests that [the bailiff] acquired any confidential information."[26] Even this holding from the criminal context demonstrates that lack of intent and lack of prejudice precludes the imposition of sanctions.

***Third***, Plaintiffs' cited authority is easily distinguished. Plaintiffs highlight three federal court cases where courts have struck a defendant's answer and entered a default in situations that are far different from the present situation.[27] These cases illustrate that the intentionality and severity of the alleged conduct is highly relevant, and they make clear that the entering of a default judgment is a rare remedy only granted in the most egregious of circumstances where the risk of prejudice could not be remedied otherwise.

In *Eagle Hospital Physicians, LLC v. SRG Consulting, Inc.*,[28] the court affirmed the entering of a default judgment only after the defendant corporation's owner *intentionally* intercepted attorney-client communications and refused to "explain how and when he had intercepted these emails, whether he had help in doing so, and whether he continued to have the ability to intercept privilege internal and attorney-client communications."[29] Because the court did not know if he could eavesdrop on these critical communications in the future, default judgment was a last resort, as "no lesser sanctions than striking Appellants' answer and counterclaims would suffice."[30]

---

[26] *People v. Wallace*, 44 Cal. 4th 1032, 1057 (Cal. 2008).
[27] Plaintiffs also cite a federal case concerning the post-9/11 "Terrorist Surveillance Program," in which the court ordered the government to "state whether any member of the trial team . . . or any individual who has been identified as a likely witness . . . is aware of any monitoring or surveillance of communications between any of the plaintiffs and their attorneys in either of these related actions." *Turkmen v. Ashcroft*, 2006 WL 4483151, at *1 (E.D.N.Y. Oct. 3, 2006). The court's reasoning in that case sheds no light on whether Plaintiffs' sought-after sanctions are appropriate.
[28] 561 F.3d 1298 (11th Cir. 2009).
[29] *Id.* at 1302.
[30] *Id.* at 1303.

In *Leor Exploration & Production, LLC v. Aguilar*[31] and *Lighthouse List Co., LLC v. Cross Hatch Ventures Corp.*,[32] the court disposed of the case via an entry of default and summary judgment, respectively, after the defendants had *hacked* into[33] or otherwise unjustly obtained[34] the plaintiffs' emails containing privileged attorney-client materials. But in each instance, the respective courts only did so after explicit findings of bad faith behavior that could not be deterred with any other sanction, as each defendant had also violated other court orders.[35]

Unlike the cases cited by Plaintiffs, Mr. Steenkolk was not intentionally or continually intercepting Plaintiffs' communications, nor was he hacking into Plaintiffs' emails and defying this Court's orders in blatant bad faith. Even Plaintiffs' own recitation of the facts of these distinguishable cases makes apparent that courts will only grant such extreme sanctions in the face of blatant, egregious, and, in many cases, illegal conduct by an eavesdropper. That conduct did not occur here.

## III. Conclusion

The Court should deny Plaintiffs' frivolous Motion for Sanctions. It is based on pure speculation and is designed to throw a wrench into the ongoing trial to prevent Plaintiffs' case from being subjected to rigorous scrutiny. Given that the Motion is frivolous, Defendants specifically request the Court award Defendants costs and fees incurred in defending against the Motion. If the Court deems a separate motion necessary for the award of costs and fees, Defendants will file a motion.

---

[31] 2010 WL 2605087 (S.D. Fla. June 29, 2010).
[32] 2014 WL 11531800 (S.D. Fla. June 12, 2014).
[33] *Leor Exploration*, 2010 WL 2605087, at *13.
[34] *Lighthouse List Co.*, 2014 WL 11531800, at *3.
[35] *Leor Exploration*, 2010 WL 2605087, at *13-17; *Lighthouse List Co.*, 2014 WL 11531800, at *9–10.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

*/s/ Rebekka C. Veith*
Kerry J. Miller, T.A. (#24562)
Rebekka C. Veith (#36062)
Paul C. Thibodeaux (#29446)
Monica L. Bergeron (#39124)
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone: (504) 556-5549
Facsimile: (504) 310-0275
kmiller@fishmanhaygood.com
rveith@fishmanhaygood.com
pthibodeaux@fishmanhaygood.com
mbergeron@fishmanhaygood.com

**ALSTON & BIRD LLP**

Eric Kuwana (admitted *pro hac vice*)
90 Park Avenue, 15th Floor
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
eric.kuwana@alston.com

Sarah O'Donohue (admitted *pro hac vice*)
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
sarah.odonohue@alston.com
*Counsel for Defendants,*
*Packaging Corporation of America,*
*Boise Packaging & Newsprint, LLC,*
*Boise Inc., and Rick Butterfield*

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2024, I provided that the foregoing Motion *in Limine* to counsel of record for Plaintiffs via e-mail.

<u>*/s/ Rebekka C. Veith*</u><br>
Rebekka C. Veith